**UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION**

IN RE:

Don Karl Juravin,                                        CASE NO.: 6: 18-bk-06821-CCJ

                                                         CHAPTER 7

      Debtor,

Federal Trade Commission,                                ADV. NO.:

      Plaintiff,

      v.

Don Karl Juravin,

      Defendant.
_____/

<u>**COMPLAINT TO DETERMINE NONDISCHARGEABILITY OF DEBT**</u>

    Plaintiff Federal Trade Commission ("FTC" or "Commission") brings this adversary proceeding pursuant to 11 U.S.C. §§ 523(a)(2)(A) and (c), for an order determining that a judgment the FTC obtained against Defendant in a prior action is excepted from discharge.

<u>**JURISDICTION AND VENUE**</u>

    1.  This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 157 and 1334, and 11 U.S.C. § 523.  This Adversary Proceeding is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I).  Plaintiff consents to entry of final orders or judgment by the Court in this Adversary Proceeding.

    2.  Venue in the Middle District of Florida is proper under 28 U.S.C. § 1409(a).

    3.  This Adversary Proceeding relates to *In re Don Karl Juravin*, No. 6:18-bk-06821-CCJ. 21368-BR, now pending in this Court ("Bankruptcy Case").  The FTC is a creditor in the

Bankruptcy Case pursuant to a final judgment against Defendant in *FTC v. Roca Labs. Inc.,* No. 8: 15-cv-2231-T-35TBM (M.D. Fla.) ("Prior Action"), for falsely advertising weight loss products and other deceptive business practices, causing over $25 million in consumer injury. Final Judgment at 18-20, DCt Doc. 253 (January 4, 2019), FTC Exhibit A.

## THE PARTIES

4.   The FTC is an independent agency of the United States Government created by statute. 15 U.S.C. §§ 41-58. The FTC enforces Sections 5(a) and 12 of the FTC Act, 15 U.S.C. §§ 45(a), 52, which prohibit unfair or deceptive business practices and false advertisements for food, drugs, devices, services, or cosmetics.

5.   The FTC brings actions in federal district courts to enjoin violations of the laws it administers and obtain equitable monetary relief, including restitution and disgorgement of unlawfully obtained monies.  15 U.S.C. § 53(b).

6.   Defendant Don Karl Juravin is the Debtor in the Bankruptcy Case.

7.   Defendant's corporate codefendants in the Prior Action were:  Roca Labs, Inc. ("RLI"); Roca Labs Nutraceutical USA, Inc. ("RLN"); Must Cure Obesity, Inc. ("MCO"), Juravin, Inc. ("JI"); and Zero Calorie Labs, Inc. ("ZCL").

8.   From 2009 through 2016, Defendant was an owner, officer, or representative of his corporate codefendants, and exercised authority and control over their advertising and sale of dietary supplements and food products, including the Roca Labs "Formula" and "Anti-Cravings" powder, to consumers throughout the United States.  He engaged in these business activities from his personal residence in this District.

9.   At all material times, acting alone or in concert with others, Defendant formulated, directed, controlled, had the authority to control, or participated in the false advertising and other deceptive practices set forth in this Complaint.

10. Defendant's corporate codefendants in the Prior Action operated as a common enterprise while engaging in the deceptive practices set forth in this Complaint.  Because Defendant perpetrated the fraud through interrelated companies under his common control, with common officers, business functions, employees, and office locations, the District Court held him jointly and severally liable with his codefendants in the Prior Action for the resulting consumer injury.

## PRIOR PROCEEDINGS

11. The FTC filed the Prior Action in September 2015.  The District Court entered a temporary restraining order against Defendant and his codefendants to halt their fraudulent scheme, and later entered a preliminary injunction and asset freeze.  DCt Doc. 13, 90.

12. The FTC filed a seven-count amended complaint against Defendant and his codefendants in the Prior Action in February 2016.  DCt Doc. 48, FTC Exhibit B.  The FTC alleged that Defendant and his codefendants falsely or deceptively advertise their weight-loss products, causing over $25 million in consumer injury.  The FTC also alleged Defendant and his codefendants unfairly used non-disparagement clauses in their sale terms for these products as part of their scheme, purporting to prohibit consumers from making truthful or non-defamatory negative comments or reviews about Defendant and his codefendants, their products, or their employees.

13. In April 2018, the FTC moved for summary judgment against Defendant and his co-defendants on all counts, including its claim for monetary relief.  DCt Doc. 210.  Defendant, who

was represented by counsel throughout the Prior Action, opposed the FTC's motion and moved

for partial summary judgment solely on the unfair nondisparagement clause claim.

14. In September 2018, the District Court issued an order granting summary judgment to

FTC on all counts as to liability, but requiring further briefing as to the amount of monetary

relief. The District Court denied Defendant's motion for partial summary judgment. Summary

Judgment Order, DCt Doc. 234, FTC Exhibit C.

15. In the Summary Judgment Order, the District Court found that Defendant and his

codefendants were liable for violating Sections 5 and 12 of the FTC Act because they:

- made false and unsubstantiated weight-loss claims about their products;

- falsely claimed that use of their products was scientifically proven to have a ninety-percent success rate in forcing users to eat half their usual food intake and cause substantial weight loss;

- deceptively failed to disclose their financial relationship to testimonialists who worked for them, and their control of a supposedly independent and objective information website that they used to promote their products;

- misrepresented the nature of that purportedly independent site;

- misrepresented that they would keep their customers' private health information confidential;

- misrepresented that consumers had agreed to non-disparagement clauses in exchange for a substantial discount on the products; and

- unfairly suppressed negative information about Defendant and his codefendants and their falsely advertised products, to the detriment of subsequent purchasers, by making threats to sue, and filing of lawsuits against, dissatisfied consumers for violating non-disparagement clauses in their online sales contracts.

16. Further, the District Court found that Defendant was jointly and severally liable for his

corporate codefendants' deceptive conduct because they operated as a common enterprise under

his ownership and control, he knew about the false and deceptive representations, he participated

in the deceptive acts, and he had authority to control them. Summary Judgment Order at 38-40.

17. On November 6, 2018, the District Court issued an order for $25,246,000 in monetary relief against Defendant.  DCt Doc. 241 at 3-4, FTC Exhibit D.

18. On January 4, 2019, the District Court entered the Final Judgment against Defendant in that amount, DCt Doc. 253 at 1-3, 18-20, FTC Exhibit A, and a permanent injunction.

19.  The District Court's findings in the Prior Action have collateral estoppel effect in this proceeding on the issue of nondischargeability under 11 U.S.C. § 523(a)(2)(A).

## DEFENDANT'S FRAUDULENT CONDUCT GIVING RISE TO THE NONDISCHARGEABLE DEBT

20. Defendant and his codefendants in the Prior Action advertised, marketed, promoted, offered for sale, sold, and distributed weight-loss products since 2009.  These products included Roca Labs "Formula" – which Defendant and his codefendants sometimes referred to as the "Mixture," or "Silica" – ("Roca Labs Formula") and Roca Labs "Anti-Cravings" ("Roca Labs Anti-Cravings").  The products were powders that Defendant and his codefendants suggested users mix with water or some other beverage and then drink.  Defendant and his codefendants also suggested that users eat Roca Labs Formula as a gel. Defendant and his codefendants often marketed their weight-loss products to consumers who wished to lose a significant amount of weight (fifty or more pounds), and touted it as a safe and cost- effective alternative to gastric bypass surgery to achieve substantial weight loss and combat obesity.

21. Defendant and his codefendants listed the Roca Labs Formula ingredients as "Beta Glucan, Guar Gum, Xanthan Gum, Konjac, Inulin, Natural Color, Sucralose, Vitamin C, B6, B12, Fruit Flavor."  Defendant and his codefendants displayed the label and described the Roca Labs Formula on their RocaLabs.com website as a "proprietary combination" of ingredients, including "quantitatively-strong, natural galactomannan and glucomannans ingredients, which are highly effective substances."

22. Defendant and his codefendants listed the Roca Labs Anti-Cravings ingredients as Beta Glucan and Fibersol®-2, and stated: "FDA approved Beta Glucan helps lower cholesterol and blood pressure as part of a healthy diet for the heart.  Used by Roca Labs to balance blood sugar levels and decrease desire for snacking.  [C]ontrol your cravings for dramatic weight loss."

23. Defendant and his codefendants sold the Roca Labs products for at least $480 for a 3-4 months' supply.  Defendant and his codefendants' revenues net of customer refunds since 2010 exceeded $25 million.

**Defendant and His Codefendants' Marketing and Product Claims**

24. Defendant and his codefendants in the Prior Action advertised, marketed, and promoted their products, including Roca Labs Formula and Roca Labs Anti-Cravings, through a variety of methods, including the websites RocaLabs.com, Mini-Gastric-Bypass.me, and others ("Roca Labs Websites").  Defendant and his codefendants frequently styled different amounts or configurations of their products, or their use, as different "procedures," such as "Gastric Bypass No Surgery" or "Gastric Bypass Alternative."

25. A substantial majority of Defendant and his codefendants' product sales were generated through Roca Labs Websites.

26. Defendant and his codefendants' advertising and marketing conveyed the core claims that:

   a. Roca Labs products caused users to reduce food intake dramatically and to lose substantial amounts of weight quickly, including as much as 21 pounds in one month, and as much as 100 pounds in seven to ten months;

   b. Users of Roca Labs products had a ninety-percent success rate in achieving substantial weight loss;

    c.   Defendant and his codefendants' products, including Roca Labs Formula and Roca Labs Anti-Cravings, were comparable or superior to bariatric surgery in providing weight-loss benefits; and

    d.   The efficacy of Roca Labs products for achieving substantial weight loss was scientifically proven.

**Defendant and His Codefendants' Search and Social Media Advertising**

27. In numerous instances, Defendant and his codefendants in the Prior Action directed consumers to Roca Labs Websites using online advertising. Defendant and his codefendants spent millions of dollars since at least 2011 to serve online advertisements through Google, Yahoo, Bing, and Facebook, including text advertisements directed to consumers using the Google, Bing, and Yahoo search engines ("Search Ads").

28. For example, Google, Bing, and Yahoo searches for terms relating to Roca Labs, bariatric surgery, or weight loss, have led to the display of Defendant and his codefendants' Search Ads, including:

    a.   [Google, search term "Roca Labs," March 24, 2015]

Roca Labs® Official Site - RocaLabs.com
Ad  www.rocalabs.com/USA-Official-Site ▼
Gastric Bypass No Surgery® at $480 World Powerful Extreme Weight Loss
4,314 followers on Google+
Women: 50-120 lbs to loss - 90% Success Rate

    b.   [Google, search term "gastric bypass," March 24, 2015]

No Surgery solution $480
www.rocalabs.com/†NO-surgery ▼
Better than Gastric bypass
Roca Labs® has 90% success

    c.   [Google, search term "lap band surgery cost," March 24, 2015]

NO surgery 86 lbs loss
health.i-newswire.com/ ▾
Avoid surgery - Read first!
Gastric bypass effect No surgery

      d.     [Google, search term "Roca Labs reviews," March 24, 2015]

Roca Labs Reviews here – Gastric bypass replacement?
Ad www.youtube.com/rocalabsreviews ▾
Really? 90,000 Roca Labs video reviews
4,448 followers on Google+

Research Center           Order Now - Only $480.00
Roca Labs Cost             Success Stories

      e.     [Bing, search term "gastric sleeve," March 25, 2015]

Better than Surgery
Ad · RocaLabs.com/APPROVED · 33,500+ followers on Twitter
Extreme-Fast Weight Loss NO Surgery Immediate Small Stomach - only $480
Roca Labs Better, Safer & Cheaper than Gastric Bypass | Official Site

Am I qualified?          Gastric Bypass Costs
Gastric Bypass NO surgery WIKI      Success Before and After Videos
90% Success Rate         Ask the Doctor

      f.     [Bing, search term "Roca Labs," March 25, 2015]

Roca Labs® Gastric Bypass
Ad · RocaLabs.com/Approved · 33,500+ followers on Twitter
No Surgery Weight Loss Formula Get Fast Results - Order Now $480
Gastric Bypass NO Surgery $480 | Roca Labs

Gastric Bypass No Surgery Formula    Success Stories
Weight Loss Surgery Alternative      Research Center
Reduces Stomach Size           Order Now - Only $480.00

      g.    [Yahoo, search term "Roca Labs," March 26, 2015]

Roca Labs® Gastric Bypass
❚❚ RocaLabs.com/Approved Ad
No Surgery Weight Loss Formula Get Fast Results - Order Now $480

Gastric Bypass No Surgery Formula    Success Stories
Weight Loss Surgery Alternative      Research Center
Reduces Stomach Size           Order Now - Only $480.00

h.   [Yahoo, search term "gastric bypass surgery," March 26, 2015]



29. Defendant and his codefendants also advertised, marketed, and promoted their products, and directed consumers to Roca Labs Websites, through:  banner and text advertisements displayed on third-party websites and in third-party mobile applications; social media and video sites, including Facebook, Twitter, Pinterest, Google+, YouTube, and Vimeo; and via news releases that Defendant and codefendants distributed or caused to be distributed.

**Claims on Defendant and His Codefendants' Roca Labs Websites**

30. When clicking on Defendant and his codefendants' online advertisements, accessing them through organic search results or social media sites, or typing the sites' URLs directly into their browsers, consumers were directed to pages on Roca Labs Websites.  On these Websites, Defendant and his codefendants made a variety of representations about the purported effectiveness of Roca Labs products for weight loss.

31. For example, Roca Labs Websites and Defendant and his codefendants' other advertising and marketing materials in numerous instances prominently featured this illustration to summarize how the Roca Labs Formula can be used to cause or help cause users to lose substantial amounts of weight:



32. Roca Labs Websites also included the following representations:

    a.  Roca Labs is the world's strongest, most effective weight loss regimen based on the Gastric Bypass NO surgery and Anti-Cravings inventions.  It can help people lose 100 lb or more without surgery.  *Results may vary

    b.  **How does it work?**

        NEW: a dose of the Roca Labs formula is mixed with water and turns into 350cc stomach-sized red mixture. Successful users report that when consumed in the morning, the Regimen creates a feeling akin to limiting functional stomach volume for the duration of your day. This result is achieved **without** surgical procedures, including cutting parts of the digestive system.

        With limited stomach volume, you eat much less. . . .  Bariatric surgery does not eliminate your cravings; Roca Labs Anti-Cravings can reduce your urge for sweets and snacks and other foods that prevent your weight loss success enhancing the loss of an additional 5 to 8 pounds a month! Learn more

    c.  **How much weight can I expect to lose?**

        The weight loss can be **immediate** with the Roca Labs' regimen, just as if you had undergone a bariatric surgery, and within few days the cravings should be diminished significantly. Depending on your commitment to the recommended rules for suggested use, a loss of **21 lb a month** is possible; however, realistically, it may take 7 to 10 months to lose 100 lb.

    d.  **No Menus, No Diet Restrictions**

        Unlike weight loss pills or diet programs, Roca Labs® Formula **does not require a strict menu or calorie restrictions**.  It practically FORCES you to eat **HALF**

the food you ate before, so you will automatically lose weight without having to keep track of every calorie you consume.

\*       \*       \*       \*

One reason the Formula is so successful is that you can **continue to eat what you like**, and without tracking everything you put in your mouth.  You can still have a slice of chocolate cake or a bowl of ice cream, but with the gastric bypass effect, you'll feel satisfied before you even finish it.  You'll eat the foods you want, but in smaller portions.

\*       \*       \*       \*

Instead of counting the calories you eat, let's look at the calories you'll automatically spare your body with Roca Labs® Formula.  From day one, you will eat HALF the portions you are used to, and begin to burn more calories than you consume. . . . Many users eat as much as 2,000 fewer calories a day while using the Formula, which translates to 17 lbs. a month!

e.   **GASTRIC BYPASS ALTERNATIVE**

**100 to 200 lb Weight Loss for Men and Women**

Better, safer and cheaper than bariatric surgery, the Roca Labs regimen can limit your functional stomach volume and help you **lose up-to 21 lb a month**. Your addiction for sweets and snacks is crucial and surgery cannot resolve that issue. The Anti-Cravings formula can diminish your cravings, which can account for an additional 5 to 8 lb weight loss each month. Highly successful users lose **100 lb over 7 to 12 month** period. Your full commitment is necessary along with a daily exercise routine. Losing even 20 lb will **stimulate sex hormones**, making you feel more vibrant and losing 50 lb can even add years to your life.

\*Result may vary – not typical or common and mostly depends on the user

f.   **90% Success Rate**

**Roca Labs™ Natural Formula forces you to eat HALF**

The formula has been used in Europe for 6 years, and is scientifically proven to have a **90% success rate**. It will always achieve a mini gastric bypass effect by PHYSICALLY occupying your stomach, leaving only **a small limited stomach volume available for 10-16 hours**. Then, with a smaller stomach size you will eat HALF, and can spare your body as much as 2,000 unnecessary calories a day without feeling any urge for food – that equals **15 lbs per month**!

g.   **Shrinking Stomach**

During a 3 to 6 month regimen, you will find that your stomach is "shrinking" in capacity and you are naturally are [sic] eating smaller quantities of food and

refraining from fatty, unhealthy foods.  Your use of the Silica® mixture will be diminishing in frequency and dose quantities throughout the Shrinking Stomach® process.

With only 20% stomach available, you eat less and can lose 4-7 lbs/wk.

h. **Can My Child Take the Formula?**

Many children have used the Formula successfully and safely.  All active ingredients are 100% natural and based on healthy fibers.  There are no known related risks from the Formula, but you must consult a doctor before you begin the procedure if you have any questions, and children should not take more than a low dose.

i. **Fighting child obesity**

As a parent, your child's health and happiness are a top priority. Your child is overweight, and you're probably aware of the many negative effects it can have on his or her life – both health-wise and socially.

Roca Labs® Natural Formula can help your child lose weight **safely and naturally**. Its active ingredients are natural healthy fibers, and it's safe for children ages 6 and up with a parent's supervision. It works by physically expanding in the stomach to leave only a very limited space available for food intake. Throughout the day, your child will eat HALF the food they used to, without hunger. The Formula has almost no flavor and adapts to the taste of your child's favorite non-carbonated, non-dairy drink.

33. Roca Labs Websites and social media pages also included videos describing the purported effectiveness of Roca Labs products for weight loss.  Defendant and his codefendants' representations about the products in these videos included:

a. What is the Formula?  Roca Labs' Formula is a medical innovation that creates a natural gastric bypass effect in the stomach.  It's based on healthy fibers, and it's classified as a food supplement.  Just mix with water, take it each morning, and it immediately expands to physically fill your stomach.  For the next 10 to 16 hours, only 20% of your stomach will be available for food intake.  Your new, small stomach will force you to eat 50% less from day one.

\*        \*        \*        \*

The Formula has been used in Europe for six years, and has a 90% success rate. Compared to gastric bypass surgery, the Formula is less risky, faster, healthier, and has almost no side effects or complications.  And, at the low price of $480, it's a fraction of the cost of gastric bypass surgery, which can be $8000 or more.

The Formula also includes the unique ingredient, beta glucan, which balances blood sugar levels and fights your cravings for sweets and snacks, something that surgery isn't capable of doing.  You'll not only eat less food without feeling hungry, you'll eat healthier too.  The Formula is kosher, and it's manufactured in an FDA compliant facility, under GMP rules.

b.  Well I'm sure you're wondering, what is the success rate?  Roca Labs' Formula is scientifically proven to have a 90% success rate.  It will always achieve a gastric bypass effect by physically occupying your stomach, leaving only 20% available space for 10-16 hours.  You'll eat 50% less, and can spare your body as much as 2,000 unnecessary calories a day without feeling any urge to overeat.  That equals 15 pounds a month.

c.  Sorry for being so direct, but you've been obese for a long time.  Friends, and doctors, have advised you to do something about it.  You don't like the way you look, and your health is suffering.  Your weight has affected your love life, self-esteem, and advancement in life.  Of course you want to have a normal weight.  Your willpower is strong.  But you never had a strong enough weapon to defeat your over-eating disorder.  You've probably tried everything:  diets, pills, maybe exercise.  Now you feel you have no choice but to do something extreme to turn your life around.  You've thought about surgery, but worry about the complications, expense, and restrictions.

\*        \*        \*        \*

Before choosing surgery, you should know that there is an alternative, a natural, healthy formula that creates an effect similar to a gastric bypass.  Though the Formula is very strong, it doesn't have the complications of surgery.

\*        \*        \*        \*

The Formula contains an FDA-approved ingredient called beta glucan.  Beta glucan has many benefits, including lowering cholesterol and blood pressure, and strengthening your immune system.  But it also balances blood sugar levels, and this lowers or eliminates your need for sweets and snacks.

34. Defendant and his codefendants' pages on third-party sites, including YouTube.com and Facebook.com, also included weight-loss claims about their products, repeated claims made about their products on Roca Labs Websites, or linked to Roca Labs Website pages where such claims appeared.  For example, the top portion of a YouTube page with links to Defendant and his codefendants' videos includes this ad:



35. The Roca Labs Websites included documents purportedly authored by a doctor, or other medical professional, describing the health and weight reduction benefits of the Roca Labs products, and summarizing the scientific literature evidencing those benefits.

36. Defendant and his codefendants included on the RocaLabs.com website, accessible under a "Medical questions" link, a document titled "Letter to Your Doctor V1-Aug12," with the subheading, "Health benefits and weight reduction in medical terms."  At times, Defendant and his codefendants attributed the "Letter to Your Doctor" to "Dr. Ross, Director of Medical Team," "Ross Finesmith, MD, Medical Consultant," or "an independent medical consultant." Defendant and his codefendants included a similar document on the Mini-Gastric-Bypass.me website, under an "Ask the Doctor, Medical Evidence for Success" link.  Among other statements, the "Letter to Your Doctor" and "Medical Evidence for Success" document described Dr. Finesmith's, or the "independent medical consultant's," experience with the Roca Labs Formula, and discussed the purported efficacy of the Roca Labs Formula for weight loss, including as follows:

> a.  I am an independent medical consultant and I'm writing this letter to describe the weight management regimen from Roca Labs® that your patient is interested in.
>
> The Roca Labs Formula® is a mixture of natural ingredients that have been shown in multiple medical studies to provide euglycemic control, early and prolonged satiety, and a reduced desire to consume the amount of food your patient is currently eating.  Although the ingredients are available separately, it is the proprietary combination that provides the greatest benefit.
>
> *       *       *       *

I am not an employee of Roca Labs and I have formed an independent conclusion based on the available medical information.  I have had many patients on the Roca Labs Procedure and all have been satisfied with the immediate reduction in appetite, cravings and weight loss.  I tried the formula myself and can confirm these findings.  I hope you consider trying the Roca Labs Formula before prescribing risky medications or surgery.

b.  My research has not found any other weight loss that has the efficacy, or biological potential, to help those with obesity lose weight.  This is why we can make the statement that "the Roca Labs Formula is probably the strongest weight loss pharmaceutical agent on the market today."  Successfully following the Roca Labs guidelines has consistently resulted in clients losing 5% of their body weight every month. This is accomplished primarily by not feeling hungry and the severe reduction in cravings for snacks. Therefore, the clients calorie intake is reduced significantly.  Most report a 50% reduction in the amount of food they eat.  Those that exercise daily, experience even faster weight loss.

\*        \*        \*        \*

There is considerable medical and scientific research to support the health and weight loss benefits of the active ingredients in the Roca Labs Formula.  Below is a summary of the literature that supports the ingredients in the Roca Labs proprietary formula as effective in weight loss and additional health benefits.  Please review and let me know if you have any questions.

37. None of the literature cited or summarized in the "Letter to Your Doctor" or the "Medical Evidence for Success" documents reported or described any study or clinical trial of Roca Labs Formula or Roca Labs Anti-Cravings.  Indeed, in the fine print of the "Terms and Conditions" on the RocaLabs.com website, Defendant and his codefendants indicated that their statements about their products' efficacy are "based on the known activity of the specific ingredients" in the products and stated:  "No clinical study has been performed on this product."  In the "Letter to Your Doctor" and "Medical Evidence for Success" documents, however, Defendant and his codefendants referenced the cited literature in a way that suggested it constituted convincing evidence of the weight-loss benefits they claimed consumers could achieve by using Roca Labs Formula or Roca Labs Anti-Cravings.

38. Defendant and his codefendants included in Roca Labs Websites medical images and terminology, and references suggestive of medical treatment and scientific research, including:

  a. The company name, "Roca Labs";

  b. Use of the caduceus symbol in versions of the Roca Labs logo, and in videos;

  c. Videos featuring spokespersons wearing white lab coats;

  d. Photos of persons wearing white lab coats and stethoscopes, and persons wearing white lab coats appearing to mix chemicals in a laboratory;

  e. References to the Roca Labs "Medical Team";

  f. Reference to Roca Labs Formula as a "medical innovation";

  g. References in search ads to a "Research Center";

  h. Use of health insurance company names and logos and the offering of reduced prices to prospective purchasers who have medical insurance;

  i. Requiring prospective purchasers to complete a "Health Application"; and

  j. Use of the FDA logo, references to FDA "compliance" and "registration," and to FDA approval of beta glucan.

39. Defendant and his codefendants' use of these images and terminology in their advertising and marketing fortified the net impression that the literature referenced in the "Letter to Your Doctor" and "Medical Evidence for Success," and the purportedly numerous consumer testimonials (discussed below), scientifically established the weight-loss benefits Defendant and his codefendants claimed for Roca Labs Formula and Roca Labs Anti-Cravings.

### Defendant and His Codefendants' Use of Testimonials and Purported Third-Party Reviews

40. Defendant and his codefendants in the Prior Action also promoted their products by touting "Success Videos," purporting to show the weight-loss success numerous users achieved

16

using Roca Labs products.  A Roca Labs Webpage discussing "Before and After Testimonials Videos" touted "Real Testimonials of 100,000 Users."  Defendant and his codefendants represented, on their websites and social media sites, that the content and quantity of these videos evidenced the efficacy of Defendants' products for weight loss, stating, "With so many success videos wherein people document an immediate gastric bypass effect without a surgery, it is evident that Roca Labs® procedure really works."

41. Defendant and his codefendants solicited "Success Videos" from purchasers by offering to pay them up to fifty percent of their money back for providing videos documenting their weight loss:

> You can earn money back as a reward for losing weight. Simply document your weight loss from your starting weight to achieving your weight loss goal. Demonstrate your weight loss with smaller size clothing, using the Success Belt or show your body in a clear convincing way. When you achieve your weight loss goal and send us the video, you will receive Money Back Reward or up to $1,000.00 within 10 days conditional and based on:
>
> 1. You must have passed the 3 stage goal
> 2. Your documented success is inspirational & convincing
> 3. Your claimed weight loss is evident in the "before & after"

The weight loss goal for purchasers would vary by individual and the information they provided in Defendant and his codefendants' Health Application, but the goal would be a substantial amount of weight.  For example, Defendant and his codefendants would assign to a person who stated that they weigh approximately 240 pounds a total "weight loss goal" of more than 120 pounds, with four intermediate goals in excess of 20 pounds each.

42. Defendant and his codefendants set out criteria for videos they deemed acceptable, and prescribed the types of positive comments it had to include:

> In short, to get this reward, film yourself now, during and after you've reached your goal. The video should be about 10 minutes long, talk about your past eating problems, the ease of using the Program, how much weight you've lost and how your life has changed.

> You can tell us about improvements in your health, self-esteem, relationships and love
> life, and even compliments you've received about your new look. Your video must be
> real, convincing and of good quality.

43. Other than some possibility of obtaining money-back rewards for submitting "Success Videos," purchasers had few options to obtain money back for products they ordered from Defendant and his codefendants' due to their general refusal to refund money once orders were deemed placed.

44. Neither the testimonial videos about weight loss resulting from use of Defendant and his co-defendant's products, nor the Roca Labs Websites, social media pages, or other advertisements that included or linked to them, adequately disclosed that the persons depicted in the videos were offered or paid any compensation in exchange for their testimonial.

45. In addition to the Roca Labs Websites described above, Defendant and his codefendants also posted, or caused to be posted, purportedly objective or independent information favorably discussing Roca Labs products on one or more other internet websites. For example, Defendant and his codefendants, or persons hired to work on their behalf, posted testimonials or other information touting Roca Labs products on third-party blogging platforms or websites without disclosing their affiliation with them. Defendant and his codefendants also operated the website Gastricbypass.me, which purported to offer information about bariatric surgery:

> Here at GastricBypass.me, we want every person who visits this site to know everything
> there is to know about bariatric surgery by providing the necessary tools. Throughout
> this site, we'll offer articles with loads of information about each bariatric surgery,
> insurance information, surgeon information, alternatives to surgery and everything in
> between – we look forward to serving anyone seeking answers before undergoing
> surgery.

46. Gastricbypass.me included, among other content, a lengthy "Surgery Failures" page, and a "Surgical Alternatives" page. The "Surgical Alternatives" page was devoted to discussing favorably the "Roca Labs Surgery Alternative® Solutions." The Roca Labs products are the

only surgical "alternative" the site discusses.  For example, the page states that its authors have "challenged the company's claim to a '90% success rate' by checking some of the 654,000 video results we got when searching for, 'YouTube Roca Labs'."  The "Surgery Alternatives" page embedded videos also found on RocaLabs.com.  It stated that "[i]n 97% of the videos provided, evidence that the surgical alternative is successful is evident from day one.  With some averaging weight loss of 0.5 to 1 pound per day, the Roca Labs Surgery Alternative® Solution is quite impressive."  It further stated that the site's "panel of experts" said that the Roca Labs claims were trustworthy "for the most part," and that the Roca Labs "[m]edical claims are correct, FDA regulations are observed, but not all the articles on the site are updated."  There was no disclosure on the GastricBypass.me site that it was operated by Defendant and his codefendants, was affiliated with RLI or RLNU, or that the site's owners or operators sold Roca Labs products.

**Defendant and His Codefendants' Purchase Process**

47. Defendant and his codefendants in the Prior Action advertised that a "Basic" package of their products, for "Up to 80 lbs to lose," cost $480 (in a single payment) for purchasers with "valid health insurance," including a "3-4 months supply" of Roca Labs Formula and an approximately three-month supply of Roca Labs Anti-Cravings.  Purchasers also were given the option to pay in installments.  Defendant and his codefendants charged non-insured consumers $640 for the same package.  Defendant and his codefendants advertised other packages featuring larger quantities of product and greater levels of customer service, for higher prices, and indicated that larger quantities of product could cause, or help cause, weight loss of more than 120 pounds.  Defendant and his codefendants' web pages describing the price of Roca Labs products prominently featured the names and logos of multiple insurance companies and emblems of branches of the United States military.

48. To purchase the products via Defendants and his codefendants' Roca Labs Websites, consumers had to enter information through "Qualify & Order" pages on the sites.  The first screens presented included videos about the "qualification" process.  Defendant and his codefendants' "Qualify & Order" pages stated that the information consumers provided would be kept confidential and would not be shared.  Exhibit A at 28.

49. Prospective purchasers had to enter personal information on one or more forms, including Defendant and his codefendants' "Health Application."  Prospective purchasers had to enter their full name, gender, age, weight, height, and insurance carrier.  Purchasers then were prompted to watch a video and to respond to Defendant and his codefendants' Health Application questions about various conditions, including issues with cholesterol, high blood pressure, diabetes, and digestion.  The Health Application also prompted prospective purchasers to give information about psychological or emotional issues relating to their weight, including past weight-loss failures, depression, and binge eating.

50. After entering shipping, order, and billing information, purchasers had to check a box next to a statement, which read in part, "I have read and agree to the terms, privacy, and money back reward / return policy[.]"  The "terms" and other referenced documents were accessible at that point via hyperlinks in the words, but were not presented in the purchase process otherwise.

51. When Defendant and his codefendants shipped their products to purchasers, they enclosed with the package items used to measure and mix Roca Labs Formula, a "Success Belt" tape measure, and documents titled "Thanks for purchasing Roca Labs®," "Summary Suggested Use," and "Roca Labs Procedure Rules & Diet." Among other statements, the "Summary" document reiterated that Defendant and his codefendants "will not share your private information with anyone" and stated that "[o]nce purchased and shipped, [RLNU] products cannot be

returned and NO refunds will be given."  The "Thanks for purchasing" insert warned purchasers

that "[t]here are **NO** returns or refunds as stated on RocaLabs.com/Terms." It further stated that

installment payments could not be cancelled or disputed, and that users who did could face legal

action and charges of $3500 or more.

52.     The "Roca Labs Procedure Rules & Diet" insert stated that the "Rules & Diet **MUST BE**

**FOLLOWED ENTIRELY** while using the procedure unless any rule compromises your health

or is not approved by your doctor, as stated in the Terms."  The first "rule" listed was:  "Limited

Eating Interval$^{TM}$ between 11am and 8pm ONLY."  "You may choose any 9 hour interval for

your daily food consumption.  No deviation is allowed.  Before 11am, you may have a healthy

snack limited to 100 calories.  Between 8-10pm, you may snack on vegetables like carrots, celery

or occasionally, low calorie popcorn."  Among other instructions, purchasers were advised:  "To

maintain the **gastric bypass effect**, drink at least six ½ liter bottles of water a day."  Purchasers

were advised to "[e]xercise to shock your body," and that "Roca Labs' procedure requires that

you exercise 5+ times a week.  If necessary, start slowly and gradually increase to at least 30

minutes daily."  Purchasers were also urged to "video document [their] success" once a week,

including "evidence of weight loss," to get "up to 50% Money Back." The insert stated that

purchasers "have 73% more chance to succeed when" they visually document their progress.

Aside from its inclusion in shipped packaging, the "Roca Labs Procedure Rules & Diet" insert

was only accessible to prospective purchasers on Roca Labs Websites via a "Support" link.

**Defendant and His Codefendants' Gag Clauses and Legal Threats**

53. Defendant and his codefendants in the Prior Action warned purchasers, through package

inserts included in product shipments, that they agreed not to write any negative reviews about

Defendant and his codefendants or their products and would owe Defendant and his

codefendants hundreds of dollars should they do so.  Defendant and his codefendants also issued

legal threats and filed lawsuits against complaining purchasers, alleging that the purchasers

would violate or had violated the "Terms and Conditions" to which they purportedly agreed

when ordering Defendants' products (the "Terms").  These threats and lawsuits included

allegations that purchasers violated the Terms purporting to prohibit them from publishing

disparaging comments about Roca Labs or its products ("Gag Clause(s)").  These practices,

described more fully below, caused or were likely to cause purchasers to refrain from

commenting negatively about Defendant and his codefendants or their products.  By depriving

prospective purchasers of this truthful, negative information, Defendant and his codefendants'

practices resulted or were likely to result in consumers buying Roca Labs products they would

not otherwise have bought.

54. The Terms were accessible to prospective purchasers via hyperlinks on Roca Labs

Websites.  The restrictions set forth in the Gag Clauses were disclosed to prospective purchasers

during the Roca Labs product purchase process only in the Terms.  Defendant and his

codefendants used multiple versions of the Terms that include Gag Clauses, since at least

September 2012.

55. Versions of the Terms used after December 2014 included a Gag Clause purporting to

prohibit purchasers from disparaging Roca Labs, its products, and its employees, regardless of

the purchasers' outcomes.  The Terms purported to require purchasers to pay the "full price"

should the purchaser breach the Gag Clause or other provisions of the Terms:

> You agree that regardless of your personal experience with RL, you will **not** disparage
> RL and/or any of its employees, products or services.  This means that you will not
> speak, publish, cause to be published, print, review, blog, or otherwise write negatively
> about RL, or its products or employees in any way.  This encompasses all forms of
> media, including and especially the internet.  This paragraph is to protect RL and its
> current and future customers from the harm of libelous or slanderous content in any form,

and thus, your acceptance of the [Terms] prohibits you from taking any action that negatively impacts RL, its reputation, products, services, management, or employees. We make it clear that RL and its Regimen may not be for everyone, and in that regard, the foregoing clause is meant to prevent "one person from ruining it for everyone." Should any customer violate this provision, as determined by RL in its sole discretion, you will be provided with seventy-two (72) hours to retract the content in question.  If the content remains, RL would be obliged to seek all legal remedies to protect its name, products, current customers, and future customers.

If you breach this Agreement, as determined by RL in its sole discretion, all discounts will be waived and you agree to pay the full price for your product.  In addition, we retain all legal rights and remedies against the breaching customer for breach of contract and any other appropriate causes of action.

56. Versions of the Terms Defendant and his codefendants used prior to December 2014 also included similar Gag Clauses and legal sanctions for breach, including paying the purported full product price.

57. The Terms Defendant and his codefendants used since December 2014 stated that "[t]he full price for your custom Regimen and RL support is $1580" and that purchasers agreed to the Gag Clause, and to promote Roca Labs and its products, in exchange for a "discount" (i.e., the $480 advertised price).  This purported "full price" was not revealed to potential purchasers except in the Terms.  Previous versions of the Terms also stated that the "full price" for the Roca Labs products and support was $1580, and characterized the lower, advertised prices that purchasers had actually been charged as "conditional," "discounted" or "subsidized" prices afforded to purchasers in exchange for their agreement to the Gag Clause and to other provisions in the Terms.  An August 2014 court filing on behalf of RLI, verified by Defendant, asserted that the "discount price" for Roca Labs products was "optional," but that "99%" of purchasers agree to the Terms in exchange for the "discount price."

58. A version of the Terms Defendant and his codefendants used prior to December 2014 provided that Defendant and his codefendants, in the event a purchaser violated the Gag Clause,

had the right to sue purchasers for an injunction, immediately bill them for $3500 in court costs and legal fees until they were determined in court, and immediately revoke all "discounts" that purchasers purportedly received. This version of the Terms further provided that Defendant and his codefendants could, after thirty days, report any such charge that remained unpaid to consumer reporting agencies, and forward the unpaid charges to a collection agency. This version of the terms also provided that Defendant and his codefendants could require purchasers who violated the Gag Clause to execute a notarized affidavit stating that their "disparaging remarks or review contained factually inaccurate material, was incorrect and breached [the Terms]." A version of the Terms used from approximately September 2012 to mid-2014 provided that the purchaser further agreed that "any report of any kind on the web will constitute defamation/slander," and agreed "to a predetermined compensation of $100,000. You agree and understand that you can not [sic] talk badly about the Formula because of any frustration you might have with the support department or your misunderstanding."

59. Defendant and his codefendants also sent purchasers a two-page, large-print "Summary" of the Terms with their orders. The summary stated, in pertinent part:

> Discount Policy. We believe in our customers and that word of mouth is the best promotion. **We are here to help you.** You were given a discount off the unsubsidized price of $1580 in exchange for your agreement to promote our products and when possible share your weight loss success with us (keep the youtube videos coming). **As part of this endorsement you also agree not to write any negative reviews about RLN or our products.** In the event that you do not honor this agreement, you may owe immediately the full price of $1,580.

60. In numerous instances, Defendant and his codefendants threatened to sue, for breach of the Gag Clauses, purchasers who stated that they had or would complain to third parties, such as the Better Business Bureau, or post negative comments about Defendant and his codefendants, their products, or their employees on internet websites. Defendant and his codefendants also

threatened complaining purchasers who sought refunds by telling them that they would be subject to liability for extortion or defamation for threatening to post, or posting, truthful negative reviews about Defendant and his codefendants, their products, or employees, or that their "discounts" would be revoked and that they would owe Defendant and his codefendants the "full" price of the products.

61. Defendant and his codefendants in some instances filed lawsuits against purchasers who posted such negative comments, alleging breach of the Gag Clauses. Defendant and his codefendants also sued, for allegedly inducing purchasers to breach the Gag Clauses, a company that runs an online site that allowed consumers to post complaints about businesses, including the Defendant and his codefendants' business, online.

62. Lawsuits the Defendant and his codefendants filed against purchasers included, and made public, information those purchasers provided in response to Defendant and his codefendants' Health Application. Defendant and his codefendants also disclosed such information to credit card processors and banks in disputes with purchasers over credit card chargebacks.

## COUNT I
### (Nondischargeable Debt for Money Obtained by False Pretenses, False Representations or Actual Fraud/Deceptive Weight-Loss Claims)

63. Plaintiff repeats and realleges the allegations in ¶¶ 3-62.

64. Through the means described in ¶¶ 20-49, Defendant represented, expressly or by implication, that:

> a. Use of Defendant's products, including Roca Labs Formula and Roca Labs Anti-Cravings, enabled the user to reduce food intake by fifty percent and to lose substantial amounts of weight quickly, including as much as 21 pounds in one month, and as much as 100 pounds in seven to ten months;

   b.   Ninety percent of users of Defendant's products, including Roca Labs Formula
        and Roca Labs Anti-Cravings, would lose substantial amounts of weight;

   c.   Defendant's products, including Roca Labs Formula and Roca Labs Anti-
        Cravings, were comparable or superior to bariatric surgery in providing weight-
        loss benefits; and

   d.   Defendant's products, including Roca Labs Formula and Roca Labs Anti-
        Cravings, were safe and effective for weight loss in children as young as six years
        old.

65.  The representations set forth in ¶ 64 were false or misleading, or were not substantiated,
at the time the representations were made.

66.  Therefore, the making of the representations set forth in ¶ 64 constitutes a deceptive act
or practice and the making of false advertisements, in violation of Sections 5(a) and 12 of the
FTC Act, 15 U.S.C. §§ 45(a) and 52.

67. Defendant's activities set forth in ¶ 64 constitute false pretenses, false representations, or
actual fraud.  Defendant acted intentionally with knowledge that he was engaged in a fraudulent
scheme, and with knowledge of the falsity of the representations or with reckless disregard of the
truth or falsity of the representations.

68. Defendant's false representations injured consumers, and were material to consumers in
the course of deciding to pay for the products offered by Defendant.  Consumers' reliance on
Defendant's representations was justifiable.

69. The total amount of money Defendant obtained from consumers by such false pretenses,
false representations or actual fraud is included in the $25,246,000 Final Judgment against him in
the Prior Action.

70. The Final Judgment is a debt for money obtained by false pretenses, false representations or actual fraud, and is excepted from discharge pursuant to 11 U.S.C. § 523(a)(2)(A).

## COUNT II
**(Nondischargeable Debt for Money Obtained by False Pretenses,
False Representations or Actual Fraud/False Establishment Claim)**

71. Plaintiff repeats and realleges the allegations in ¶¶ 3-62.

72. Through the means described in ¶¶ 20-49, Defendant represented, expressly or by implication, that use of Defendant's products, including Roca Labs Formula and Roca Labs Anti-Cravings, was scientifically proven or established to have a ninety-percent success rate in forcing users to eat half their usual food intake and cause substantial weight loss.

73. In fact, use of Defendant's products, including Roca Labs Formula and Roca Labs Anti-Cravings, was not scientifically proven to have a ninety-percent success rate in forcing users to eat half their usual food intake and cause substantial weight loss.

74. Therefore, the representation set forth in ¶ 72 is false or misleading, and constitutes a deceptive act or practice and the making of false advertisements in violation of Sections 5(a) and 12 of the FTC Act, 15 U.S.C. §§ 45(a) and 52.

75. Defendant's activities set forth in ¶ 72 constitute false pretenses, false representations, or actual fraud. Defendant acted intentionally with knowledge that he was engaged in a fraudulent scheme, and with knowledge of the falsity of the representations or with reckless disregard of the truth or falsity of the representations.

76. Defendant's false representations injured consumers, and were material to consumers in the course of deciding to pay for the products offered by Defendant. Consumers' reliance on Defendant's representations was justifiable.

77. The total amount of money Defendant obtained from consumers by such false pretenses, false representations or actual fraud is included in the $25,246,000 Final Judgment against him in the Prior Action.

78. The Final Judgment is a debt for money obtained by false pretenses, false representations or actual fraud, and is excepted from discharge pursuant to 11 U.S.C. § 523(a)(2)(A).

**COUNT III**
**(Nondischargeable Debt for Money Obtained by False Pretenses,**
**False Representations or Actual Fraud/Misrepresentations About Gastricbypass.me)**

79. Plaintiff repeats and realleges the allegations in ¶¶ 3-62.

80. Through the means described in ¶¶ 45-46, Defendant represented, expressly or by implication, that Gastricbypass.me was an independent, objective resource for research and information related to bariatric surgery and alternatives to bariatric surgery for weight loss, and about Roca Labs products.

81. In fact, Gastricbypass.me was not an independent, objective resource for research and information related to bariatric surgery and alternatives to bariatric surgery for weight loss, or about Roca Labs products.

82. Therefore, the representation set forth in ¶ 80 was false or misleading, and constitutes a deceptive act or practice and the making of false advertisements, in or affecting commerce, in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

83. Defendant's activities set forth in ¶ 80 constitute false pretenses, false representations, or actual fraud. Defendant acted intentionally with knowledge that he was engaged in a fraudulent scheme, and with knowledge of the falsity of the representations or with reckless disregard of the truth or falsity of the representations.

84. Defendant's false representations injured consumers, and were material to consumers in the course of deciding to pay for the products offered by Defendant.  Consumers' reliance on Defendant's representations was justifiable.

85. The total amount of money Defendant obtained from consumers by such false pretenses, false representations or actual fraud is included in the $25,246,000 Final Judgment against him in the Prior Action.

86. The Final Judgment is a debt for money obtained by false pretenses, false representations or actual fraud, and is excepted from discharge pursuant to 11 U.S.C. § 523(a)(2)(A).

**COUNT IV**
**(Nondischargeable Debt for Money Obtained by False Pretenses,**
**False Representations or Actual Fraud/Failure to Disclose Material Connections)**

87. Plaintiff repeats and realleges the allegations in ¶¶ 3-62.

88. Through the means described in ¶¶ 40-46, Defendant represented, expressly or by implication, that:

   a.  persons who posted or provided testimonials or other information about Defendant's products, including Roca Labs Formula and Roca Labs Anti-Cravings, were satisfied users of the products; and

   b.  Gastricbypass.me provided research and information related to bariatric surgery and alternatives to bariatric surgery for weight loss, including an alternative sold by Roca Labs.

89. In numerous instances in connection with these endorsements, Defendant failed to disclose, or disclose adequately, that:

a.  Defendant promised or paid the persons referred to in their advertising financial compensation or other incentives for their testimonials or other postings about Defendant's products; and

b.  Defendant owned or operated Gastricbypass.me, and sold Roca Labs Formula and Roca Labs Anti Cravings.

90. This additional information would be material to consumers in deciding to purchase and use Defendant's products, including Roca Labs Formula and Roca Labs Anti-Cravings.

91.  Defendant's failure to disclose the material information described in ¶ 89, in light of the representations described in ¶ 88, constitutes a deceptive act or practice and the making of false advertisements, in or affecting commerce, in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

92. Defendant's activities set forth in ¶¶ 88-89 constitute false pretenses, false representations, or actual fraud.  Defendant acted intentionally with knowledge that he was engaged in a fraudulent scheme, and with knowledge of the falsity of the representations and deceptive omissions or with reckless disregard of the truth or falsity of the representations or deceptive omissions.

93. Defendant's false representations and deceptive omissions injured consumers, and were material to consumers in the course of deciding to pay for the products offered by Defendant. Consumers' reliance on Defendant's representations and omissions was justifiable.

94. The total amount of money Defendant obtained from consumers by such false pretenses, false representations or actual fraud is included in the $25,246,000 Final Judgment against him in the Prior Action.

95. The Final Judgment is a debt for money obtained by false pretenses, false representations or actual fraud, and is excepted from discharge pursuant to 11 U.S.C. § 523(a)(2)(A).

## COUNT V
### ((Nondischargeable Debt for Money Obtained by False Pretenses, False Representations or Actual Fraud/Deceptive Discount Claim)

96. Plaintiff repeats and realleges the allegations in ¶¶ 3-62.

97. Through the means described in ¶¶ 53-62, Defendant represented, expressly or by implication, that purchasers agreed to pay the difference between the purported "discount" price charged and the purported "full price" if they posted negative comments or reviews about the Defendant and his codefendants, their products, or employees.

98. In fact, purchasers did not agree to pay the difference between the purported "discount" price charged and the purported "full price" if they posted negative reviews about the Defendant and his codefendants, their products, or employees.

99. Therefore, the representation set forth in ¶ 97 is false or misleading, and constitutes a deceptive act or practice, in or affecting commerce, in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

100.    Defendant's activities set forth in ¶ 97 constitute false pretenses, false representations, or actual fraud. Defendant acted intentionally with knowledge that he was engaged in a fraudulent scheme, and with knowledge of the falsity of the representations and deceptive omissions or with reckless disregard of the truth or falsity of the representations or deceptive omissions.

101.    Defendant's false representations and deceptive omissions injured consumers, and were material to consumers in the course of deciding to pay for the products offered by Defendant. Consumers' reliance on Defendant's representations and omissions was justifiable.

102.     The total amount of money Defendant obtained from consumers by such false

pretenses, false representations or actual fraud is included in the $25,246,000 Final Judgment

against him in the Prior Action.

103.     The Final Judgment is a debt for money obtained by false pretenses, false

representations or actual fraud, and is excepted from discharge pursuant to 11 U.S.C.

§ 523(a)(2)(A).

WHEREFORE, Plaintiff FTC requests that the Court:

(a)  Determine that the Final Judgment against Defendant Don Karl Juravin in the Prior

Action of $25,246,000 is excepted from discharge pursuant to 11 U.S.C. § 523(a)(2)(A); and

(b) Grant Plaintiff such other and further relief as this case may require and the Court deems

just and proper.

Dated: February 1, 2019               Respectfully submitted,

                                       _/s/ Michael P. Mora_____
                                       Michael P. Mora (Ill. Bar No. 6199875)
                                       Federal Trade Commission
                                       600 Pennsylvania Ave., NW
                                       Washington, D.C. 20580
                                       Telephone: (202) 326-3373
                                       E-Mail:  mmora@ftc.gov
                                       ***Attorney for Plaintiff Federal Trade Commission***