**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

| | |
|---|---|
| IN RE:<br><br>    Don Karl Juravin,<br><br>        Debtor. | CASE NO.: 6:18-bk-06821-CCJ<br>CHAPTER 11 |
| Federal Trade Commission,<br><br>    Plaintiff,<br><br>    v.<br><br>Don Karl Juravin,<br><br>    Defendant. | ADV. NO.: 6:19-ap-00030-CCJ |

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF**
**<u>MOTION FOR SUMMARY JUDGMENT</u>**

**Table of Contents**

I. Introduction ............................................................................................................... 1

II. Background ............................................................................................................... 2

III. Legal Standards........................................................................................................ 4

IV. Argument ................................................................................................................. 5

    A. The District Court's findings establish that the Judgment is nondischargeable on the basis of false pretenses and false representation.................................................................. 7

        1. The District Court's findings satisfy the first element of the false pretenses and false representations test under Section 523(a)(2)(A):  that Debtor made misrepresentations with the purpose and intent to deceive consumers........................................................................ 7

        2. The District Court's findings satisfy the second element of the false pretenses and false representations test under Section 523(a)(2)(A):  that consumers relied on the Debtor's misrepresentations, and the reliance was justified. ............................................................... 15

        3. The District Court's findings satisfy the third element of the false pretenses and false representations test under Section 523(a)(2)(A):  that consumers sustained losses as a result of the Debtor's misrepresentations. ....................................................................................... 16

    B. The District Court's findings also establish that the Judgment is nondischargeable on the basis of actual fraud. ....................................................................................................... 17

V. Conclusion ............................................................................................................... 18

**Table of Authorities**

**Cases**

*Bush v. Balfour Beatty Bahamas, Ltd. (In re Bush)*, 62 F.3d 1319 (11th Cir. 1995)......................5

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) ............................................................4

*City Bank & Trust v. Vann (In re Vann)*, 67 F.3d 277 (11th Cir. 1995)......................................15

*Equitable Bank v. Miller (In re Miller)*, 39 B.R. 301 (11th Cir. 1994)......................................13

*Ershowski v. Freedman (In re Freedman)*, 431 B.R. 245 (Bankr. S.D. Fla. 2010), *aff'd,* 427 F.
   App'x 813 (11th Cir. 2011) ..........................................................................13

*Field v. Mans*, 516 U.S. 59 (1995)............................................................................15

*FTC v. Abeyta (In re Abeyta)*, 387 B.R. 846 (Bankr. D.N.M. 2008)............................................5

*FTC v. Direct Benefits Grp., LLC*, No. 6:11-CV-1186-ORL-28, 2013 WL 3771322 (M.D. Fla.
   July 18, 2013)......................................................................................6

*FTC v. Ettus (In re Ettus)*, 596 B.R. 405 (S.D. Fla. 2018) ..........................................5, 14

*FTC v. Gem Merch. Corp.*, 87 F.3d 466 (11th Cir. 1996) ......................................................12

*FTC v. IAB Mktg. Assocs., LP*, 746 F.3d 1228 (11th Cir. 2014) ..........................................6, 14

*FTC v. Lanier (In re Lanier)*, 589 B.R. 901 (Bankr. M.D. Fla. 2017) ........................................5

*FTC v. Porcelli (In re Porcelli)*, 325 B.R. 868 (Bankr. M.D. Fla. 2005).................................5, 8

*FTC v. Tashman*, 318 F.3d 1273 (11th Cir. 2003)..........................................................6, 15

*FTC v. Washington Data Res.*, 704 F.3d 1323 (11th Cir. 2013) ..............................................16

*FTC v. Washington Data Res.*, 856 F. Supp. 2d 1247 (M.D. Fla. 2012)..................................14, 15

*Ga. Dept. of Human Servs. v. Ngwangu (In re Ngwangu)*, 529 B.R. 358 (Bankr. N.D. Ga. 2015) 6

*Husky Int'l Elecs., Inc. v. Ritz*, 136 S.Ct. 1581 (May 16, 2016)............................................17

*In re Firestone*, 26 B.R. 706, 714-15 (Bankr. S.D. Fla. 1982) ..............................................12

*In re Laskey*, 441 B.R. 853, 856 (Bankr. N.D. Ohio 2010) ..................................................14

*In re Lederman*, 1995 WL 792072 (Bankr. C.D. Cal. June 26, 1995)............................................5

*In re St. Laurent*, 991 F.2d 672 (11th Cir. 1993) ..........................................................16

*In re Thompson*, 555 B.R. 1 (B.A.P. 10th Cir. 2016) ........................................................17

*Kraft Inc. v. FTC*, 970 F.2d 311, 322 (7th Cir. 1992)......................................................16

*Lobato v. Pay Less Drug Stores, Inc.*, 261 F.2d 406 (10th Cir. 1958) ......................................12

*Lyons v. Wiggins (In re Wiggins)*, 250 B.R. 131 (Bankr. M.D. Fla. 2000) ..................................13

*McClellan v. Cantrell*, 217 F.3d 890 (7th Cir. 2000) ......................................................17

*Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306 (1950) ..........................................6

*Parklane Hosiery Co., Inc. v. Shore*, 439 U.S. 322 (1979)....................................................5

*SEC v. Bilzerian (In re Bilzerian)*, 153 F.3d 1278 (11th Cir. 1998)..................................6, 7, 17

*Smith v. Cravey (In re Cravey)*, 105 B.R. 700 (Bankr. M.D. Fla. 1989)......................................13

*Taylor v. Wood (In re Wood)*, 245 F. App'x 916, 918 (11th Cir. 2007)........................................7

*Thomas v. Loveless (In re Thomas)*, 288 Fed. Appx. 547 (11th Cir. 2008)....................................5

**Statutes**

11 U.S.C. § 523(a)(2)(A) ..............................................................................passim

FTC Act, 15 U.S.C. § 45(a) ..................................................................................1

**Rules**

Fed. R. Civ. P. 56..........................................................................................4

## I.      Introduction

The Federal Trade Commission's $25 million judgment ("the Judgment") against

Defendant Juravin (the "Debtor") is not dischargeable because it is a debt for money obtained by

fraud.  From 2009 to 2016, the Debtor defrauded thousands of consumers by selling weight-loss

supplements through a series of misrepresentations.[1]  The Debtor claimed his products would

cause dramatic weight loss—as much as 21 pounds per month, and 100 pounds in seven to ten

months.  (Plaintiff's Statement of Undisputed Fact in Support of Summary Judgment ("SUF")

¶¶ 19, 31.)  He claimed that his products were "scientifically proven to have a 90% success rate."

(SUF ¶¶ 20, 31.)  He set up a website that was supposedly an objective source of information

about weight-loss surgery.  (SUF ¶ 43.)  He used reviews and testimonials that purported to be

from satisfied customers.  (*Id.*)  And he claimed that consumers had gotten a discount for

agreeing not to post negative comments or reviews.  (SUF ¶¶ 52, 58–59.)  Each of these claims

was false.

The Federal Trade Commission ("the FTC") sued the Debtor for his deceptive practices,

which violated Sections 5(a) and 12 of the FTC Act, 15 U.S.C. §§ 45(a) and 52.[2]  The District

Court for the Middle District of Florida ("District Court") found that the Debtor had made each

of these misrepresentations and that there was no genuine dispute of material fact, and therefore

---

[1] The Debtor operated through five corporate entities:  Roca Labs, Inc. ("RLI"), Roca Labs
Nutraceutical USA, Inc. ("RLNU"), Must Cure Obesity, Co. ("MCO"), Juravin, Incorporated
("JI"), and Zero Calorie Labs, Inc. ("ZCL") (collectively, the "Roca Entities").  The District
Court found that these entities operated as a common enterprise, and that the Debtor "controlled
virtually every aspect of" their business.  (SUF ¶ 70); *see also* Answer (DE 4), ¶¶ 7–8.

[2] *FTC v. Roca Labs, Inc., et al.*, Case No. 8:15-cv-02231-MSS-CPT (M.D. Fla.) (the
"Enforcement Action").

granted the FTC summary judgment.  (SUF ¶¶ 31, 43, 52.)  The District Court also found that the Debtor "knew of the material misrepresentations and either participated in the deceptive acts or had authority to control them," and therefore held him personally liable for the monetary harm he caused consumers.  (SUF ¶ 69.)

The District Court's extensive findings have collateral estoppel effect in this action. Under 11 U.S.C. § 523(a)(2)(A), any debt for money obtained by false pretenses, a false representation, or actual fraud is not dischargeable.  The District Court's findings satisfy the tests for all three theories.  Therefore, the Judgment is excepted from discharge under § 523(a)(2)(A), and the FTC should be granted summary judgment on all counts.

## II.    Background

From 2009 to 2016, the Debtor operated the Roca Entities.[3]  Through the Roca Entities, the Debtor marketed and sold weight-loss products called Roca Labs Formula and Roca Labs Anti-Cravings—powders that could be mixed with water.  (SUF ¶ 4.)  The Debtor claimed that these products worked by physically filling the stomach, creating "a natural gastric bypass effect."  (SUF ¶ 6.)  He promoted these products using the terms "Gastric Bypass No Surgery" and "Gastric Bypass alternative," and used illustrations, such as the one below, to depict how the product supposedly worked:

---

[3] The Debtor operated the Roca Entities with George Whiting, his co-defendant in the Enforcement Action.  The Debtor and Whiting were the only owners and officers of the Roca Entities.  (SUF ¶ 66.)  According to the District Court, Whiting's role "appeared to be more limited" than the Debtor's role.  (SUF ¶ 67 n.1.)



(SUF ¶ 5.)  The Debtor's website also included links to documents, such as "Letter to Your Doctor V1-Aug12," purportedly written by a doctor or other medical professional, that supposedly described the benefits of the Debtor's products and summarized scientific literature regarding those benefits.  (SUF ¶ 7.)  The Debtor claimed that the use of his products was scientifically proven to have a ninety percent success rate in forcing users to eat half their usual food intake and causing substantial weight loss.  (SUF ¶ 39.)

The Debtor promoted his products in a variety of ways, including through a website called Gastricbypass.me ("Gastric Bypass") and through online testimonials on the Roca Labs website from purportedly satisfied customers.  (SUF ¶ 43.)  Gastric Bypass presented itself as an independent source of information about bariatric surgery, but was actually owned and controlled by the Debtor.  (SUF ¶¶ 43, 51.)  Gastric Bypass did not disclose its affiliation with the Roca Entities.  (SUF ¶ 47.)  The Debtor also instructed employees to create fake testimonials, social media posts, and product reviews.  (SUF ¶¶ 45–46.)  The Debtor did not instruct employees to disclose their affiliation with the Roca Entities, and employees did not do so.  *Id.*

Additionally, the Debtor tried to hide negative information about his products by subjecting his victims to a "gag clause."  The Debtor consistently advertised the price of his product as $480, with no exceptions or limitations.  (SUF ¶ 56.)  However, he buried a

3

disclaimer in the legal, contractual language of the "Terms and Conditions" document that said that consumers had received a discounted price of $480 in exchange for agreeing not to make negative comments about the Debtor's products. (SUF ¶ 57.) Users who posted truthful negative information were required to pay the purported full price of $1,580, and were subjected to threats from the Debtor's lawyers. (SUF ¶¶ 15–17.)

The Debtor admits that the District Court found that he was liable for violating the FTC Act because among other things, he: (1) made false and unsubstantiated weight-loss claims about his products; (2) falsely claimed that use of their products was scientifically proven to have a ninety-percent success rate in forcing users to eat half their usual food intake and cause substantial weight loss; (3) misrepresented the nature of a purportedly independent website that he used to promote his products; (4) deceptively failed to disclose his financial relationship to testimonialists who worked for him; and (5) misrepresented that consumers had agreed to non disparagement clauses in exchange for a substantial discount on the products. Answer at ¶¶ 15–16. He also admits that the District Court found him jointly and severally liable for the deceptive conduct because his corporate codefendants in the Enforcement Action operated as a common enterprise under his ownership and control, he knew about the false and deceptive representations, he participated in the deceptive acts, and he had authority to control them. *Id.* at ¶ 17.

## III.    Legal Standards

Summary judgment is appropriate where there is no genuine dispute of material fact, and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party must show that it is entitled to judgment and identify the portions of the record showing there is no material issue of fact in dispute. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The

moving party may show that there is no material issue of fact in dispute through collateral

estoppel, or issue preclusion. *Parklane Hosiery Co., Inc. v. Shore*, 439 U.S. 322, 331-32 (1979).

      A prior judgment against an individual for deceptive practices and monetary relief under

Sections 5(a) and 13(b) of the FTC Act satisfies all elements of fraud under § 523(a)(2)(A) for

issue preclusion purposes. *See FTC v. Ettus (In re Ettus)*, 596 B.R. 405 (S.D. Fla. 2018); *FTC v.*

*FTC v. Lanier (In re Lanier)*, 589 B.R. 901 (Bankr. M.D. Fla. 2017); *FTC v. Abeyta (In re*

*Abeyta)*, 387 B.R. 846 (Bankr. D.N.M. 2008); *FTC v. Porcelli (In re Porcelli)*, 325 B.R. 868

(Bankr. M.D. Fla. 2005); *In re Lederman*, 1995 WL 792072 (Bankr. C.D. Cal. June 26, 1995).

The Court "may rely on collateral estoppel to reach conclusions about certain facts, foreclose

relitigation of those facts, and then consider those facts as evidence of nondischargeability."

*Thomas v. Loveless (In re Thomas)*, 288 Fed. Appx. 547, 548 (11th Cir. 2008) (internal quotation

marks omitted).

      Issue preclusion in bankruptcy proceedings prevents the relitigation of federal court

findings on issues relevant to nondischarageability. *Grogan v. Garner*, 498 U.S. 279, 284 n.11

(1991). A federal court's findings are barred from relitigation when: (i) the bankruptcy issue

was actually litigated in the prior litigation; (ii) the burden of persuasion in the discharge

proceeding is not significantly heavier than the burden of persuasion in the prior litigation;

(iii) the findings were a critical and necessary part of the judgment in the prior litigation; and

(iv) the issue in the prior litigation and the issue in the bankruptcy court are identical. *Bush v.*

*Balfour Beatty Bahamas, Ltd.*, 62 F.3d 1319, 1322 (11th Cir. 1995).

## IV.    Argument

      Summary judgment is appropriate here because there is no genuine dispute of material

fact and the FTC is entitled to judgment as a matter of law. The Debtor is barred from

relitigating the District Court's findings because of issue preclusion.  The District Court,

following actual litigation[4] and applying the same preponderance of evidence burden of

persuasion that applies in this proceeding,[5] set forth extensive findings.  These findings were

critical and necessary to its holding that the Debtor had violated the FTC Act and that he was

individually liable for monetary relief.[6]

        As set forth below, the District Court's findings on issues identical to the issues in this

proceeding establish that the Judgment is nondischargeable on the basis of false pretenses and

---

[4] Actual litigation means that the litigant had the "opportunity" to "participate, attend, and present her case, no more and no less." *Ga. Dept. of Human Servs. v. Ngwangu (In re Ngwangu)*, 529 B.R. 358, 363 (Bankr. N.D. Ga. 2015) (citing *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)).  The Debtor admits that he was represented by counsel throughout the Enforcement Action.  Answer at ¶ 14.  He answered the Complaint, participated in discovery, and attended court hearings throughout the case.  *See, e.g.*, DCt. Doc. 22, 234 at 35, 34 at 42, and 105.  He also opposed the FTC's summary judgment motion and filed a cross-motion for partial summary judgment.  (SUF ¶ 70.)  As the Debtor had the opportunity to participate in, attend, and present his case, and actually did so, the bankruptcy issues were actually litigated in the Enforcement Action.

[5] The FTC had to prove the Debtor's liability under the FTC Act by a preponderance of the evidence.  *FTC v. Direct Benefits Grp., LLC,* No. 6:11-cv-1186-Orl-28TBS, 2013 WL 3771322 at *1 (M.D. Fla. July 18, 2013).  Establishing that a debt is excepted from discharge under § 523(a)(2)(A) also requires proof by a preponderance of evidence.  *SEC v. Bilzerian (In re Bilzerian)*, 153 F.3d 1278, 1281 (11th Cir. 1998).  Therefore, the burden of persuasion in this proceeding is not at all heavier than the burden of persuasion in the Enforcement Action.

[6] The District Court could not have found deceptive acts or practices in violation Section 5(a) of the FTC Act without finding misrepresentations, or monetary liability without finding that Defendant knew about the deceptions and had the authority to control them.  *See, e.g., FTC v. Tashman*, 318 F.3d 1273, 1277 (11th Cir. 2003) (to prove liability under Section 5, FTC must establish existence of material representation likely to mislead reasonable consumers); *see also FTC v. IAB Mktg. Assocs., LP*, 746 F.3d 1228, 1233 (11th Cir. 2014) (to establish individual liability, FTC must show that direct participation or authority control, along with knowledge of the deceptive practices).  Likewise, the District Court could not have found that Defendant had engaged in deceptive acts or practices in violation Section 5(a) of the FTC Act without finding that consumers had reasonably relied on Defendant's false representations, and that they had been harmed.  *Tashman*, 318 F.3d at 1277.  Therefore, the District Court's findings were critical and necessary parts of the Judgment.

false representations.[7]  These findings also establish that the Judgment is nondischargeable on the basis of actual fraud.

     **A.**     **The District Court's findings establish that the Judgment is nondischargeable on the basis of false pretenses and false representation.**

To prove false representations under 523(a)(2)(A), a creditor must establish that:  (i) the debtor made a false representation with the purpose and intent to deceive the creditor; (ii) the creditor relied on the misrepresentation, and reliance was justified; and (iii) the creditor sustained a loss as a result of the misrepresentation.  *In re Bilzerian*, 153 F.3d at 1281.  The District Court's findings establish each of these elements.

     **1.**     **The District Court's findings satisfy the first element of the false pretenses and false representations test under Section 523(a)(2)(A): that Debtor made misrepresentations with the purpose and intent to deceive consumers.**

The District Court's findings establish that the Debtor made a series of material omissions and false representations about his weight-loss products.[8]  They also establish that his purpose and intent was to deceive consumers.

---

[7] Section 523(a)(2)(A) sets forth three separate grounds for non-dischargeability:  false pretenses, a false representation, or actual fraud.  *In re Lloyd*, 549 B.R. 282, 291 (Bankr. M.D. Fla. 2016).

[8] Material omissions fall under the rubric of false pretenses.  "The concept of false pretenses is especially broad.  It includes any intentional fraud or deceit practiced by whatever method in whatever manner."  *Taylor v. Wood (In re Wood)*, 245 F. App'x 916, 918 (11th Cir. 2007) (citation omitted).  "False pretenses may be implied from conduct or may consist of concealment or non-disclosure where there is a duty to speak, and may consist of any acts, work, symbol, or token calculated and intended to deceive."  *Id.*

a. **The District Court's findings satisfy the first part of the first element of the Section 523(a)(2)(A) test:  that the Debtor used false pretenses and false representations.**

The District Court's findings on the Debtor's misrepresentations in violation of the FTC Act satisfy the false pretenses and false representations requirement of Section 523(a)(2)(A). The District Court found that the Debtor violated the FTC Act, that the Debtor made each of the five claims about his product that the FTC alleged, and that each of these claims was false and misleading.[9]

*First*, the District Court found that the Debtor falsely represented that his products caused substantial weight loss.[10]  (SUF ¶¶ 19, 31.)  The Debtor did not dispute the existence of these representations.  (SUF ¶ 31.)  The District Court found that these claims were disseminated in online advertisements that "intentionally contained medical images and terminology to . . . induce customers to believe that the claims were scientifically validated by the medical community."  (SUF ¶ 33.)  However, the Debtor failed to produce any competent and reliable scientific evidence to substantiate their claims.  (SUF ¶ 34.)  The District Court therefore concluded that the Debtor's representations as to weight-loss were false.  (SUF ¶ 33.)

*Second*, the District Court found that the Debtor falsely represented that his products were scientifically proven to work for 90% of users.  (SUF ¶ 20.)  The FTC alleged that the

---

[9] Misrepresentations that violate the FTC Act also establish false pretenses or false representation under 523(a)(2)(A).  *See, e.g.*, *In re Porcelli*, 325 B.R. 868.

[10] The FTC alleged that the Debtor made the following deceptive weight-loss claims:  (a) his products would enable users to reduce food intake by fifty percent and to lose substantial amounts of weight quickly; (b) ninety-percent of users would lose substantial amounts of weight; (c) his products were comparable or superior to bariatric surgery in providing weight-loss benefits; and (d) his products were safe and effective for weight loss in children as young as six years old. (SUF ¶ 19.)

Debtor claimed his products were scientifically proven to have a ninety percent success rate in forcing users to eat half their usual food intake and cause substantial weight loss. (*Id.*) Again, the Debtor did not dispute the existence of this representation. (SUF ¶ 31.) The District Court found that there was no evidence of a valid clinical study of the Debtor's products. (SUF ¶¶ 40.) The District Court therefore concluded that the Debtor's representation as to scientific proof was false. (SUF ¶ 40.)

*Third*, the District Court found that the Debtor made a material omission by failing to disclose that it owned the website Gastric Bypass. (SUF ¶¶ 49–59.) Gastric Bypass was a website that presented itself as an independent, objective resource for information regarding bariatric surgery and alternatives to surgery discussed bariatric surgery, including the Debtor's products. (SUF ¶ 43.) Gastric Bypass provided favorable commentary on the Debtor's products as an alternative to bariatric surgery. (SUF ¶ 44.) Debtor created it, controlled it, and was responsible for its content. (SUF ¶ 44.) However, Gastric Bypass did not disclose any affiliation with the Debtor or his companies, and the Debtor admitted he "didn't see any value . . . saying, 'Hey, we are Roca Labs.'" (SUF ¶ 44; Ex. 1, Juravin Dep.175:22-24.) Based on the undisputed evidence, the District Court found that the Debtor failed to disclose his ownership of Gastric Bypass, and that this nondisclosure was a material omission because the Debtor's ownership of Gastric Bypass was a material fact upon which reasonable consumers and prospective customers would likely rely. (SUF ¶¶ 48–50.)

*Fourth*, the District Court found that the Debtor made a material omission by failing to disclose his financial relationship with people who provided testimonials. The Debtor used online customer testimonials, product reviews, and social media comments to promote his products. (SUF ¶¶ 43, 45, 46.) However, purportedly satisfied customers depicted in videos

were actually the Debtor's employees.  (SUF ¶ 45.)  The Debtor's employees also created fake

product reviews and social media comments under fictitious names, at the Debtor's direction.

(*Id.*)  The Debtor also personally edited fake product reviews.  (*Id.*)  The Debtor did not instruct

employees to disclose their affiliation, and they did not do so.  (SUF ¶ 46.)  Based on the

undisputed evidence, the District Court found that the Debtor failed to disclose his financial

relationship with testimonialists, and that this nondisclosure was a material omission because this

financial relationship was a material fact upon which reasonable consumers and prospective

customers would likely rely.  (SUF ¶¶ 48, 50.)

    *And fifth*, the District Court found that the Debtor falsely represented that consumers had

gotten a discount for agreeing not to post negative reviews or comments about the products.

(SUF ¶ 42.)  The Debtor advertised the cost of a basic package of his product as $480 with "valid

health insurance."  (SUF ¶ 55.)  He advertised the cost as $480 in multiple online advertisements,

including those that appeared on Google, Bing, and Facebook.  (*Id.*)  He advertised the cost as

$480 at the top of his websites.  (*Id.*)  He advertised the cost as $480 in banner ads.  (SUF ¶ 56.)

And, he advertised the cost as $480 in search advertisements.  (*Id.*)  In none of these

advertisements did he include disclaimers that the price was discounted or subsidized in

exchange for a customer's agreement to refrain from publishing negative comments.  (*Id.*)

However, when customers received a package of the Debtor's product, they received two

documents that told them that they had been given a discount from the unsubsidized price of

$1580 in exchange for agreeing to promote the Debtor's products, for example by refraining

from posting negative comments.[11]  (*Id.*)  The District Court found that the Debtor had created

the net impression that the price of the product was $480, with no exceptions or limitations, and

that the disclaimer as to the discount did not dispel the net impression that the price was $480

"with no strings attached."  (SUF ¶ 58.)  It therefore held that the Debtor's representation as to

the discount was false.[12]  (SUF ¶ 59.)  Therefore, the District Court found that each of the

Debtor's five claims was either a false pretense or both a false pretense and a false

representation.[13]

---

[11] This "gag clause," which the Debtor buried in a Terms and Conditions document, stated that the purchaser agreed to pay the full price of the product if the purchaser made disparaging comments about the products.  (SUF ¶ 15.)  Later versions of the gag clause stated that customers would have to pay $100,000 for making disparaging comments, that they would be subject to injunction and to being billed $3500 for legal fees and court costs, and that they would be required to sign affidavits stating that the disparaging remarks were incorrect.  (*Id.*)  The Debtor threatened legal action against customers who complained or said they would complain to the Better Business Bureau or who said they had plans to post negative comments online.  (SUF ¶ 17.)  In one instance, the Debtor's lawyer told a customer who complained that the Debtor would press criminal charges for extortion.  (SUF ¶ 19.)  The District Court found that these practices likely harmed consumers by suppressing negative reviews, were unavoidable, and had no countervailing benefit, and were therefore an unfair business practice that violated the FTC Act.  345 F. Supp. 3d 1375, 1393–95 (M.D. Fla. 2019).

[12] The District Court also ruled that the Debtor made false representations as to the privacy of sensitive health information.  345 F. Supp. 3d at 1390.  The Debtor told his victims that this information would be kept confidential, but then disclosed this information to payment processors in response to customers' disputes about credit card charges for his products.  *Id.* Those false representations, however, are not at issue in this proceeding.

[13] The material omissions about Gastric Bypass and online testimonials were false pretenses, while the claims about weight-loss, scientific proof of effectiveness, and the discount were both false pretenses and false representations.

###### b.  **The District Court's findings satisfy the second part of the first element of the Section 523(a)(2)(A) test:  that the Debtor's purpose and intent was to deceive.**

The District Court's findings on individual liability meet the intent requirement of Section 523(a)(2)(A).  The District Court found that the Debtor was personally liable because he was a shareholder, officer, or director of a corporate entity who was personally involved in the fraud.  It also found that he was individually liable for monetary judgment because he knew of the pervasive misrepresentations and had the authority to control them.

The Debtor is personally liable for the false representations because he was a shareholder, officer, or director of the Roca Entities, who was himself involved in that company's fraud.  Under § 523(a)(2)(A) "a court will hold a shareholder, officer, or director of a corporate entity personally liable for a tort, including fraud, in which he himself is involved."  *In re Seaborne*, 106 B.R. 711, 715 (Bankr. M.D. Fla. 1989) (applying fraud exception where debtor controlled corporation and actively participated in its fraudulent conduct); *In re Firestone,* 26 B.R. 706, 714-15 (Bankr. S.D. Fla. 1982) (same) (citing *Lobato v. Pay Less Drug Stores, Inc.*, 261 F.2d 406, 408-09 (10th Cir. 1958) (corporate officer or agent who "directs or participates actively" in tortious act of corporation is personally liable for tort)).[14]  This common law fraud liability rule is consistent with the FTC Act standard for holding individuals liable for corporate deceptive conduct.  *FTC v. Gem Merch. Corp.*, 87 F.3d 477, 470 (11th Cir. 1996) (individual liable for

---

[14] *See also*, *In re Forbes*, 186 B.R. 764, 768 (Bankr. S.D. Fla. 1995) (debt for willful and malicious injury excepted from discharge under § 523(a)(6), where debtor controlled corporation and actively participated in its tortious conduct); *Delong Equipment Co. v Wash. Mills Abrasive Co.,* 840 F.2d 843, 851 (11th Cir. 1988) (in antitrust action sounding in tort, holding that "personal participation by a corporate employee, officer, or director in the wrongful activities of a corporation is sufficient to make the individual, as well as the corporation, substantively liable for a tort.").

deceptive conduct of corporations where he participated directly in the deceptive conduct of the corporations or had authority to control them).

The District Court found that the Roca Entities operated as a common enterprise (SUF ¶ 66),[15] and that the Debtor "controlled virtually every aspect of [their] business."  (SUF ¶ 70.) He was the owner of MCO and JI, and served as an officer of RLI and RLNU.  (SUF ¶ 2.)  He "was in charge of daily operations and was 'responsible for all matters involving Roca Labs, including advertisements.'"  (SUF ¶ 70.)  He controlled RLI and personally received $7 million during that time.  (SUF ¶ 71.)  He had sole control over RLI's main checking accounts, personally authorized credit card expenditures for online ads, and received bank statements addressed to his home for RLI and ZCL.  (*Id.*)  And, he liberally transferred funds back and forth between the Roca Entities, transferred substantial sums to himself, and often paid his personal expenses from the corporate accounts.  (*Id.*)

The District Court's findings also establish the Debtor's intent to deceive.  Fraudulent intent need not be shown by direct evidence; it can be inferred from the totality of the circumstances.  *Lyons v. Wiggins (In re Wiggins)*, 250 B.R. 131, 134 (Bankr. M.D. Fla. 2000).  It can be established by the debtor's misrepresentation, nondisclosure of material facts, and deceptive conduct.  *Smith v. Cravey (In re Cravey)*, 105 B.R. 700, 703 (Bankr. M.D. Fla. 1989). It can also be established by the debtor's reckless disregard for the truth or falsity of a statement combined with the magnitude of the misrepresentation.  *Ershowski v. Freedman (In re Freedman)*, 431 B.R. 245, 257 (Bankr. S.D. Fla. 2010), aff'd, 427 F. App'x 813 (11th Cir. 2011); *Equitable Bank v. Miller (In re Miller)*, 39 F.3d 301, 305 (11th Cir. 1994).  Summary judgment

---

[15] The District Court found a common enterprise based on the Roca Entities' common owners and officers, and the commingling of funds.  (SUF ¶ 66.)

for intent is proper when "the record of the case leaves no plausible honest explanation for the

debtor's action." *In re Ettus*, 596 B.R. at 411 (quoting *In re Laskey*, 441 B.R. 853, 856 (Bankr.

N.D. Ohio 2010)).

The standard for individual liability under the FTC Act also requires a level of knowledge

that meets the fraud intent requirements. *IAB Mktg. Assocs., LP*, 746 F.3d at 1233; *see also FTC*

*v. Wash. Data Res.*, 856 F. Supp. 2d 1247, 1276 (M.D. Fla. 2012), aff'd, 704 F.3d 1323 (11th

Cir. 2013) (stating that the FTC must show that "the individual defendant[s] knew or should have

known of the alleged deceptive misrepresentation"). Here, the District Court found knowledge

based on the Debtor's degree of participation in business affairs. (SUF ¶¶ 68–69.) It noted that

the Debtor: (i) controlled virtually every aspect of the Roca Entities' business (SUF ¶ 70); was

in charge of daily operations, and was responsible for all matters involving the business (*id.*);

controlled RLI's main checking accounts, personally authorized credit card expenditures for

online ads, and received bank statements addressed to his home for RLI and ZCL (SUF ¶ 71);

and liberally transferred funds back and forth between the Roca Entities (*id.*). The District Court

also found that the Debtor had created Gastric Bypass, and that he chose not to inform

consumers that Gastric Bypass was operated by the Roca Entities. (SUF ¶ 44.) It also found that

the Debtor personally edited fake product reviews, and directed employees to write posts or

reviews and comment on the Roca Entities' Facebook Advertisements. (SUF ¶ 45.) Based on

this extensive degree of participation in business affairs, the District Court found the Debtor

"knew of the material misrepresentations and either participated in the deceptive acts or had

authority to control them." (SUF ¶ 69.) The District Court's findings regarding the Debtor's

14

knowledge establish his intent to deceive, as required by Section 523(a)(2)(A).[16]  Indeed, the

Debtor's knowledge of and control over pervasive fraud leaves no plausible honest explanation

other than that the Debtor's purpose and intent was to deceive.

In sum, the District Court's findings satisfy the first requirement of the false

representation test:  the Debtor is liable for making false representations with the purpose and

intent to deceive.

> 2.    **The District Court's findings satisfy the second element of the false pretenses and false representations test under Section 523(a)(2)(A): that consumers relied on the Debtor's misrepresentations, and the reliance was justified.**

The District Court's findings also establish the second element of false pretenses and

false representations:  consumers relied on the Debtor's omissions or false representations, and

their reliance was justified.  In order to prove deception, the FTC was required to prove that the

representations were likely to mislead customers acting reasonably under the circumstances, and

therefore were material.  *Tashman*, 318 F.3d at 1277.  "A representation is material if likely

relied upon by a reasonable prospective purchaser." *Wash. Data Res*., 856 F. Supp. 2d at 1272.

"An express claim used to induce the purchase of a service is presumed material." *Id*. at 1273.

Section 523(a)(2)(A) requires only justifiable reliance, which is a lower standard than reasonable

reliance.  *In re Vann*, 67 F.3d at 280-81; *see also Field v. Mans*, 516 U.S. 59, 70-71 (1995)

(unlike reasonable reliance, justifiable reliance depends on the particular person's qualities and

characteristics).

---

[16] The Debtor's own testimony further buttresses the District Court's finding that the Debtor knew about the misrepresentations.  The Debtor candidly testified that his products did not actually work, and that it was a way to trick consumers into fasting and drinking more water. Exhibit 2, Juravin Dep. 543:8-12, 545:22-546:6.  In his own words, *"I cannot be direct with them … I have to trick the customer with love."  Id.* (emphasis added).

Here, the District Court found that there was no dispute as to materiality.  (SUF ¶¶ 31, 50, 59.)  The Debtor's weight-loss claims were inherently material, as they significantly involved health.  (SUF ¶ 33 (citing *Kraft Inc. v. FTC*, 970 F.2d 311, 322 (7th Cir. 1992)).)  These findings more than satisfy the justifiable reliance requirements of the false pretenses and false representation tests.

> **3.      The District Court's findings satisfy the third element of the false pretenses and false representations test under Section 523(a)(2)(A): that consumers sustained losses as a result of the Debtor's misrepresentations.**

Finally, the District Court's findings in the Enforcement Action satisfy the last part of the false representation test:  consumers suffered losses as a result of the Debtor and his co-defendants' false representations.  The District Court found that the FTC was entitled to monetary relief for consumer redress, and that the proper remedy was the net revenues from the Debtor's deceptive conduct.  (SUF ¶ 75 (citing *FTC v. Wash. Data Res.*, 704 F.3d 1323, 1327 (11th Cir. 2013)).)  The measurement of consumers' net payments was proper because "the amount of net revenue (gross receipts minus refunds), rather than the amount of profit (net revenue minus expenses), is the correct measure of unjust gains under section 13(b)."  *Id.*  The District Court therefore ordered a monetary judgment of $25,246,000 against the Debtor, plus post-judgment interest.[17]  (SUF ¶ 76.)  The remaining balance on this judgment is $24,820,763.28.  (SUF ¶ 81.)

---

[17] Section 523(a)(2)(A) of the Bankruptcy Code excepts from discharge in bankruptcy any debt "for money ... to the extent obtained by ... false pretenses, a false representation, or actual fraud." 11 U.S.C. § 523(a)(2)(A).  Under the statute, a debt resulting from actual fraud "encompasses any liability arising from money, property, etc., that is fraudulently obtained," including "relief that may exceed the value obtained by the debtor." *Cohen v. De La Cruz*, 523 U.S. 213, 223 (1998). This includes a money judgment entered by a court of competent jurisdiction.  *See St. Laurent, II v. Ambrose*, 991 F.2d 672, 678-79 (11th Cir.1993).  The Judgment is a debt for money, a
*(continued on next page…)*

16

Accordingly, the District Court's findings establish all elements of the tests for nondischargeability due to false pretenses and false representations.

### B.    The District Court's findings also establish that the Judgment is nondischargeable on the basis of actual fraud.

The Judgment is also nondischargeable because it is a debt for money obtained by actual fraud.  Actual fraud is a separate ground for excepting a debt from discharge under § 523(a)(2)(A) that does not require a misrepresentation or reliance.  *Husky Int'l Elecs., Inc. v. Ritz*, 136 S. Ct. 1581 (2016) (holding that "actual fraud" is a distinct prong of the exception that does not require a misrepresentation by the debtor, and encompasses "anything that counts as 'fraud'" under the general common law of torts "and is done with wrongful intent"); *McClellan v. Cantrell*, 217 F.3d 890, 892–93 (7th Cir. 2000) (same).  To prove actual fraud, the FTC must show that the Debtor participated in a fraudulent scheme, with the intent to cheat or deceive consumers.  *See*, *e.g.*, *In re Thompson*, 555 B.R. 1, 10 (B.A.P. 10th Cir. 2016).

As fully discussed in Section IV.A.1.b above, the District Court's extensive findings establish that the Debtor "controlled virtually every aspect of" the fraudulent scheme, in which he and his co-defendants in the Enforcement Action sold weight-loss products to consumers using a series of false representations.  Together with its findings that the Debtor controlled his corporate defendants and had actual knowledge of the deceptive conduct, the magnitude of the false representations, and his perpetuation of the scheme over several years, the court's findings

---

*(…continued from previous page)*

disgorgement judgment to remedy his fraudulent behavior.  It therefore falls squarely within the language of § 523(a)(2)(A).  *In re Bilzerian*, 153 F.3d at 1281 (disgorgement judgment for securities fraud debtor owed to SEC is debt for money obtained by fraud excepted from discharge under § 523(a)(2)(A)).

17

establish that he participated in the fraudulent scheme with the requisite intent to deceive.

Accordingly, the court's findings satisfy the actual fraud test.

## V.    Conclusion

For the reasons set forth above, the FTC's judgment against the Debtor is excepted from discharge under § 523(a)(2)(A).  Accordingly, the FTC respectfully requests that the Court grant summary judgment to Plaintiff FTC.


Dated: November 4, 2019                    Respectfully submitted,


                                           /s/ Michael P. Mora
                                           Michael P. Mora (Ill. Bar No. 6199875)
                                           Sangjoon Han (DC Bar No. 998971)
                                           Federal Trade Commission
                                           600 Pennsylvania Ave., NW
                                           Washington, D.C. 20580
                                           Telephone: (202) 326-3373
                                           E-Mail:  mmora@ftc.gov
                                           ***Attorneys for Plaintiff Federal Trade Commission***