**UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION**

| | |
|---|---|
| **IN RE:**<br><br>  Don Karl Juravin,<br><br>         Debtor. | **CASE NO.: 6:18-bk-06821-KSJ**<br><br>**CHAPTER 7** |
| **Federal Trade Commission,**<br><br>         Plaintiff,<br><br>    v.<br><br>**Don Karl Juravin,**<br><br>         Defendant. | **ADV. NO.: 6:19-ap-00030-KSJ** |

**FEDERAL TRADE COMMISSION'S RESPONSE TO DEFENDANT
DON KARL JURAVIN'S POST-TRIAL BRIEF**

In his Post-Trial Brief, Defendant Don Karl Juravin makes one primary argument: because the FTC (in his view) did not introduce new evidence, the Court should find the FTC's judgment is excepted from discharge. But this ignores reality. The FTC did elicit and submit more evidence – it called Juravin to testify. Moreover, Juravin incorrectly claims that the FTC was required to re-prove elements of its case that have been established as matters of fact and law (and that Juravin conceded in prior briefing). Further, Juravin seemingly continues to challenge the FTC's judgment by *reference in a footnote* to two cases the U.S. Supreme Court has agreed to hear. First, in the footnote, Juravin misstates the holdings of the *split* Circuit decisions appealed to the Supreme Court. More importantly, Juravin's reference to those pending, *unresolved* cases does not change the fact that the FTC's judgment against him is final.

Finally, Juravin mischaracterizes testimony from the witnesses he called live or via deposition testimony, leaving the incorrect impression that their testimony was helpful or even relevant. Because Juravin's Post-Trial Brief (ECF No. 81, "Juravin Brief") does not rebut the mountain of evidence the FTC submitted supporting fraudulent intent, the Court should find the FTC's judgment is excepted from discharge.

## I. ARGUMENT

Juravin argues that the FTC did not produce evidence beyond what it relied upon at the summary judgment stage in the Enforcement Action.[1] This is patently false. The FTC called Juravin to testify and elicited many hours of testimony from him. The FTC has relied on that testimony in proving its case against Juravin with respect to all of the claims in this case, *see* FTC's Written Closing Argument at 8-26, 31-35 (ECF No. 80, "FTC Closing"). Further, at trial, Juravin testified about information he claims supported the product claims, and that he had not previously disclosed in the Enforcement Action. *See, e.g.*, FTC Closing at 9-10, 13-22, 34-35. It is now up to the Court to determine whether Juravin's shifting, and at times conflicting, stories show he is not credible. *J. Thompson Invs., LLC v. Soderstrom (In re Soderstrom)*, 524 B.R. 835, 841 (Bankr. M.D. Fla. 2015) (fraudulent intent often "depends largely upon an assessment of the credibility and demeanor of the debtor"). The evidence shows he is not. FTC Closing at 34-35.

In addition to the arguments above, Juravin's Brief contains several other, notable errors. First, Juravin suggests the FTC needed to re-litigate many issues that have already been decided and are law of the case. Next, Juravin casually mentions two FTC cases pending before the Supreme Court, but those cases provide no reason to delay or change this Court's eventual

---

[1] Defined terms used herein have the same meaning as that used in the FTC's Written Closing Argument (ECF No. 80).

ruling. Finally, Juravin misrepresents the testimony of both his irrelevant and relevant witnesses. At bottom, none of the issues raised in Juravin's Brief diminish the voluminous evidence the FTC submitted supporting a finding that Juravin had the necessary intent for non-dischargeability purposes when he advertised and marketed Roca Labs products.

### A. Juravin Has Already Conceded Many of the Issues He Now Contests in His Post-Trial Brief

Juravin conceded that collateral estoppel and *res judicata* applied to four of the five elements of the FTC's fraud dischargeability claim under 11 U.S.C. § 523(a)(2)(A). Order Partially Granting and Partially Denying Plaintiff's Motion for Summary Judgment at 6 (ECF No. 34, "Order"); Response and Memorandum of Law in Opposition To Plaintiff's Motion for Summary Judgment at 9-11, n.4 (ECF No. 22). This Court found that the District Court did not reach the issue of intent in the Enforcement Action so collateral estoppel could not apply to that issue. Order at 7. Further, this Court ruled: "[w]eighing the circumstantial evidence, considering Mr. Juravin's sworn statements, and given the size of this potentially non-dischargeable Judgment exceeding $25 million, I cannot find *as a matter of law* that Mr. Juravin made the established false representations with the intent to deceive." Order at 7 (ECF No. 34). Thus, the Court ruled it would conduct a trial on Juravin's intent so it could weigh the evidence and evaluate Juravin's credibility. Order at 6-7.

This Court ruled that *res judicata* and collateral estoppel applied to all of the elements for non-dischargeability under Section 523(a)(2)(A) other than intent. Order at 6. "Specifically, the District Court Judgment finally determines that the Debtor made a false representation, the customers relied on the misrepresentation, the reliance was justified, and the loss was quantified at $25,246,000." *Id.* Thus, all of the facts from the order entered in the Enforcement Action that support those elements have been conclusively decided in this adversary proceeding, and are

3

now law of the case. Under the law-of-the-case doctrine, "an issue decided at one stage of a case is binding at later stages of the same case." *United States v. Escobar-Urrego*, 110 F.3d 1556, 1560 (11th Cir. 1997); *see also Guarantee Ins. Co. v. Brand Mgmt. Serv. Inc.*, No. 12-61670-CIV, 2014 WL 11531365, at *12 (S.D. Fla. Sept. 15, 2014) ("This doctrine bars consideration of 'legal issues that were actually, or by necessary implication' decided at an earlier stage in the same case.") (quoting *Newman v. Ormond*, 456 F. App'x 866, 867 (11th Cir. 2012)). Because of the effect of collateral estoppel and *res judicata*, and the consequences of law of the case, the FTC did not re-prove facts already found in the Enforcement Action. Nor did it need to.[2] Rather, the FTC quoted the most pertinent findings from the Enforcement Action as it summarized its proof for each of the claims at issue in this case. *See* FTC Closing at 7, 10-11, 22-23, 26-30.

Nevertheless, Juravin ignores the effects of those legal doctrines to argue that the FTC was required to re-prove already established facts in order to show he had the requisite intent to deceive in this case. For example, Juravin claims the FTC had to bring in deceived or unhappy customers,[3] thereby ignoring the facts supporting the holdings that his weight loss claims were material, that consumers justifiably relied on the misrepresentations at issue, and that the customer harm flowing from those misrepresentations was over $25 million. *FTC v. Roca Labs, Inc.*, 345 F. Supp. 3d 1375, 1386-1390 (M.D. Fla. 2018); Adversary Complaint, Ex. A – Final

---

[2] In fact, Juravin's counsel specifically requested that the FTC not tread on the established record, and the Court agreed. Trial Tr. 8/17/20 at 42:9-43:4 (noting that the District Court findings are binding).

[3] Juravin argues that he is the only person who introduced any customer testimony. Juravin Brief at 10. However, as Juravin himself acknowledged, the customers he relies upon to establish his products "worked" took products that differed from those at issue in the Enforcement Action. Trial Tr. 8/18/20 at 167:2-12. Further, the FTC did not need customer testimony because the fact that consumers were harmed by Juravin's deceptive claims is law of the case. Order at 5-6.

Judgment and Order for Permanent Injunction and Other Equitable Relief (Adv. ECF No. 1-1 (Dist. Ct. ECF No. 241)). Juravin's assertions also ignore the District Court's findings about consumer harm related to the gag clause: "the Court finds that Defendants' practices have caused or were likely to cause substantial injury to consumers. The record demonstrates that some consumers paid hundreds of dollars for the Roca Labs products and unsuccessfully sought refunds because of Defendants' practice of issuing threats under the guise of enforcing the gag clause." *Roca Labs*, 345 F. Supp. 3d at 1395.[4]

Next, Juravin argues the FTC failed in its burden of proof because it did not provide medical evidence that the products were falsely advertised or harmful to the public. First, the FTC has not alleged the products caused consumers to become ill; and it did not need to offer any evidence on an issue that falls outside its complaint.[5] Second, the FTC did prove, and the District Court found – with the assistance of expert testimony[6] – that the Roca Labs products were falsely advertised and that Juravin and others had no substantiation for the claims made. *Roca Labs*, 345 F. Supp. 3d at 1387-1388.

---

[4] The District Court reached this finding after examining complaints from several consumers who, after complaining about Roca Labs products, received threatening letters from Defendants. *Roca Labs*, 345 F. Supp. 3d at 1393-1395.

[5] Juravin also asserts that the FTC had to show that Roca Labs products were a "public threat or harm." Juravin Brief at 11. Here, Juravin claims the FTC needed to provide evidence of standards he made up. The FTC did not make such allegations in the Complaint. In fact, Juravin made the same argument in the Enforcement Action and the District Court rejected it. *Roca Labs*, 345 F. Supp. 3d at 1395. This and Juravin's other fictional standards show how desperate he is to avoid a finding of intent to deceive – he's made up factual and legal thresholds that are not part of this case. Notably, none of these phony standards is required for the FTC to meet its burden of proof on intent.

[6] In making these rulings, the District Court noted that Dr. Free (the same Dr. Free who testified in the adversary proceeding) had not been qualified as an expert witness in the Enforcement Action, so it could not rely on his opinion. *Roca Labs*, 345 F. Supp. 3d at 1388.

Finally, in a last, truly desperate attempt to avoid liability, Juravin makes up another factual scenario in arguing that selling baking soda as a weight loss product represents a "true scam" (Juravin Brief at 11), as if deceptive, unsubstantiated, and false advertising for weight loss products resulting in over $25 million in product sales was not. If ultimately the Court were to engage in this preposterous exercise (and it is not required for this case) of determining which is the worse scam for a weight loss product – the sale of baking soda or fiber plus vitamins – the answer is apparent. Absent actual proof of efficacy or studies evidencing either exemplar's claimed success, they are equally deceptive. Simply put, if a seller markets a substance claiming it has X effect, but he knows he has no proof of X effect, we can swap product substances into infinity (*i.e.* baking soda, pixie dust, fiber with vitamins, fiber without vitamins…) and the result will be the same: the seller knowingly made deceptive claims about central characteristics of his products intending to deceive consumers into purchasing the sham product.

### B. *AMG* and *Credit Bureau Center* Do Not Impact the Issue Before the Court

Next, Juravin subtly collaterally attacks the judgment entered against him by referencing two cases the Supreme Court has taken this term. Juravin Brief, n.1. Juravin, however, misrepresents the holdings of those cases – lumping them into one, unified holding despite the fact the decisions establish a *Circuit split*. *FTC v AMG Capital, Mgmt., LLC*, 910 F.3d 417 (9th Cir. 2018); *FTC v. Credit Bureau Ctr.*, 937 F.3d 764 (7th Cir. 2019).

Juravin's footnote also leaves the reader guessing as to how those decisions are related to Juravin's non-dischargeability case. To the extent Juravin cites those cases to argue the judgment entered in the Enforcement Action is not valid, he is wrong.[7] Juravin Brief, n.1.

---

[7] As an initial matter, this Court lacks jurisdiction to overturn or unwind a judgment entered by the District Court. 28 U.S.C. § 1334; 28 U.S.C. § 157; *In re Happy Hocker Pawn Shop, Inc.*,

6

Specifically, Juravin's position is contrary to established law in the Eleventh Circuit, holding "grants of certiorari do not themselves change the law" and "must not be used by courts of this circuit as a basis for granting a stay of execution that would otherwise be denied." *Schwab v. Sec'y, Dep't. of Corr.*, 507 F.3d 1297, 1298 (11th Cir. 2007) (collecting cases and denying stay request); *see also Gissendaner v. Comm'r, Georgia Dep't. of Corr.*, 779 F.3d 1275, 1284 (11th Cir. 2015) (agreeing with *Schwab* and "a long line of cases refusing to assign precedential significance to grants of certiorari").

Juravin's position also ignores longstanding Supreme Court precedent holding that a statutory grant of power to award injunctive relief includes the power to grant the full panoply of equitable remedies, including monetary remedies. *Porter v. Warner Holding Co.*, 328 U.S. 395, 399, 402 (1946). This precedent underpins decades of circuit court decisions approving monetary relief in FTC actions. *See FTC v. H.N. Singer, Inc.*, 668 F.2d 1107 (9th Cir. 1982); *FTC v. U.S. Oil & Gas Corp.*, 748 F.2d 1431, 1432, 1434 (11th Cir. 1984); *FTC v. Sec. Rare Coin & Bullion Corp.*, 931 F.2d 1312, 1314-1315 (8th Cir. 1991); *FTC v. Freecom Commc'ns, Inc.*, 401 F.3d 1192, 1202 n.6 (10th Cir. 2005); *FTC v. Direct Mktg. Concepts, Inc.*, 624 F.3d 1, 15 (1st Cir. 2010); *FTC v. Bronson Partners, LLC*, 654 F.3d 359, 365 (2d Cir. 2011); *FTC v. Ross*, 743 F.3d 886, 890-892 (4th Cir. 2014). It is clear that in this Circuit, the relief available under the FTC Act includes monetary relief. *FTC v. Gem Merch. Corp.*, 87 F.3d 466, 470 (11th Cir. 1996); *FTC v. U.S. Oil & Gas Corp.*, 748 F.2d 1431, 1433-34 (11th Cir. 1984). The Eleventh Circuit has reaffirmed this precedent many times over the past three decades, including earlier this year. *Id.*; *see also FTC v. Simple Health Plans, LLC*, 801 Fed. App'x 685, 687-88 (11th Cir. 2020); *FTC v. Washington Data Res., Inc.*, 704 F.3d 1323, 1326 (11th Cir. 2013); *FTC*

---

212 Fed. Appx. 811, 816 (11th Cir. 2006) (explaining district court referral powers and core versus non-core distinction for bankruptcy court jurisdiction).

*v. Lalonde*, 545 Fed. App'x 825, 832 (11th Cir. 2013); *FTC v. USA Fin., LLC*, 415 Fed. App'x 970, 975 (11th Cir. 2011).

Even assuming Juravin's future hoped-for result at the Supreme Court in *AMG* and *CBC* overrules this Eleventh Circuit precedent, it does him no good.  The District Court entered judgment in January 2019, and Juravin never appealed.  Supreme Court rulings that have so-called "retroactive effect" are limited to "*cases still open on direct review*."  *See Harper v. Va. Dept. of Tax'n*, 509 U.S. 86, 97 (1993) (emphasis added); *James B. Beam Distilling Co. v. Ga.*, 501 U.S. 529, 541 (1991) ("retroactivity in civil cases must be limited by the need for finality . . . a new rule cannot reopen the door already closed") (Souter, J.).[8]  The judgment resulting in the debt at issue here will stand no matter what happens at the Supreme Court.

If Juravin's position, whatever it is, rests on the idea that any defendant could stop all enforcement of existing law simply by referencing *someone else's challenge* of that law in the appellate courts, he is wrong.[9]  Notably, Juravin does not and cannot provide any support for this position, as none exists.

---

[8] The result will be no different if Juravin were to seek relief from the District Court under Rule 60(b).  For instance, the Supreme Court has held that a change in decisional law is not generally an "extraordinary circumstance" justifying relief under Rule 60(b).  *See Gonzalez v. Crosby*, 545 U.S. 524, 536 (2005).

[9] Given the brevity of the footnote about *AMG* and *CBC*, it is unclear what relief Juravin seeks in referencing those cases.  If Juravin is seeking a stay pending the eventual ruling in those cases, he bears the "heavy burden" of proving the "exceptional response" of a stay pending appeal is warranted.  *Larios v. Cox*, 305 F. Supp. 2d 1335, 1336 (N.D. Ga. 2004) (quoting *United States v. Hamilton*, 963 F.2d 322, 323 (11th Cir. 1992)); *Winston-Salem/Forsyth County Bd. of Educ. v. Scott*, 404 U.S. 1221, 1231 (1971) (Burger, C.J., in chambers)).  Specifically, Juravin would need to prove:  (1) he has made a strong showing that he is likely to succeed on the merits; (2) he will be irreparably injured absent a stay; (3) a stay would not substantially injure the other parties interested in the proceeding; and (4) the public interest favors the stay.  *Nken v. Holder*, 556 U.S. 418, 434 (2009); *Democratic Exec. Comm. of Fla. v. Lee*, 915 F.3d 1312, 1317 (11th Cir. 2019); *FTC v. IAB Mktg. Assocs., LP*, 972 F. Supp. 2d 1307, 1311 (S.D. Fla. 2013) (IAB I).  Juravin cannot satisfy any of those elements, nor did he attempt even to raise them in his brief.

### C. Juravin's Summary of His Evidence Is Misleading

Juravin argues that this Court should rely on the testimony from three witnesses (Dr. Free, Ms. Ullola, and Ms. Laporte). Juravin Brief at 4-8. Notably absent from Juravin's brief is any statement about *when* those three witnesses first met Juravin. The reason is simple: none of the three witnesses can provide relevant testimony because none of them met or worked with Juravin until well *after* the FTC filed the Enforcement Action. To the extent these witnesses interacted with Juravin *after* he had been sued for false and deceptive claims, they cannot know what Juravin's subjective intent was during the relevant period (2011 through 2015). Thus, for the reasons raised in the FTC's pretrial filings, this Court should reject the testimony of Dr. Free, Ms. Laporte, and Ms. Ullola as irrelevant. *See* Plaintiff's Objections and Counter-Designations to Defendant's Amended Statement of Deposition Designations (ECF No. 52); Plaintiff's Objections to Defendant's Exhibits (ECF No. 62).

Were the Court to consider their testimony, it should at least be in an accurate light. In summarizing those witnesses' testimony, Juravin leaves out some critical information and mischaracterizes other testimony. Once those errors are fixed, the story Juravin attempts to tell through them ends quite differently than he suggests.

Dr. Marcus Free testified during the trial. To the extent any of his testimony bears on Juravin's subjective intent, it shows Juravin did not ensure the safety of Roca Labs products prior to Dr. Free's involvement. Trial Tr. 6/26/20 at 36:5-37:5 (testifying that he reviewed the formula's ingredients in order to spot interactions with medications that users take, but had no knowledge of anyone doing that same review prior to his). In addition, Dr. Free testified that he had no knowledge of the professionals associated with Roca Labs products before him. Specifically, Dr. Free testified that he had not spoken with his predecessor, Dr. Finesmith. Trial

Tr. 6/26/20 at 31:17-19.  Also, Dr. Free stated did not recognize any of the names of the six purported medical doctors Juravin claims provided recommendations on the Roca Labs products in his written discovery responses.  Trial Tr. 6/26/20 at 32:15-33:12; PX 160 (response to Interrogatory No. 1).  Further, as a medical doctor specializing in the area of bariatric surgery, Dr. Free testified that he had not heard of Roca Labs products prior to his involvement with Juravin in 2017.  Trial Tr. 6/26/20 at 30:9-19.  Even today with his telemedicine based, physician supervised weight loss practice, Dr. Free often prescribes *medications* and provides guidance about diet and exercise to his patients.  Trial Tr. 6/26/20 at 12:21-13:3.

Juravin next claims Mr. Choksi's testimony supports his case.  But the most salient portion of Mr. Choksi's testimony that Juravin relies upon did not, in fact, happen in the sequence he claims.  In his brief, Juravin claims that Mr. Choksi helped him develop the formulation for the Roca labs products, and that shows Juravin developed a product "carefully, and with expert input, … before placing it on the market."[10]  Juravin Brief at 6 (citing Trial Tr. 6/26/20 at 56:12-13).  Conveniently, Juravin's counsel did not ask Mr. Choksi *when* he supposedly did that work.  As Mr. Choksi later testified, he estimated it happened in 2015 or 2016.  Trial Tr. 6/26/20 at 65:5-10.  That, combined with the fact that Mr. Choksi did not even meet Juravin until 2013 (Trial Tr. 6/26/20 at 59:7-21) establishes that Mr. Choksi was *not* involved with Juravin, Roca Labs, or its products *prior to* the first sales of the products.

Juravin also relies on the testimony of two purportedly happy customers, Ms. Ullola and Ms. Laporte.  However, Ms. Ullola, did not encounter Juravin or Roca Labs until 2016.  Ullola Depo. at 10:8-10, 10:23-11:2 (ECF No. 52-2)  Ms. Ullola also testified that she made significant

---

[10] Notably, Mr. Choksi was not proffered as an expert witness.  It is unclear why in his Post-Trial Brief, Juravin now claims Mr. Choksi is an expert, nor is it apparent what his area of expertise is.  *See, e.g.*, Trial Tr. 6/26/20 at 54:18-55:25; 59:1-6 (stating he is not testifying as an expert).

changes in her diet and exercise habits while using the products. Ullola Depo. at 20:1-16 (ECF No. 52-2). From her testimony, it is unclear whether she actually spoke with or only messaged with Juravin – she only knows that his name was used in responses to her on the messaging platform. Ullola Depo. at 31:20-23, 32:2, 32:7-34:2 (ECF No. 52-2).

The other purported happy customer, Ms. Laporte, also did not know Juravin or use the Roca Labs products during the relevant period. Laporte Depo. at 9:1-11:1 (ECF No. 52-1). Ms. Laporte encountered the products on the Juravins' table one day when she was cleaning their home in 2016. *Id*. Ms. Laporte also testified that: (a) she did not strictly follow the instructions for the products, but modified them; (b) she never explored the Roca Labs website or the videos on its YouTube page prior to 2016; (c) she discussed the Roca Labs products with *Anna Juravin*; (d) she made other changes in her diet and activity levels while using the products; and (e) when she worked as a customer service representative for Roca Labs, she used a pseudonym, not her actual name. Laporte Depo. at 9:22-11:1, 17:2-14, 23:13-24, 24:2-20, 25:25-26:18, 36:8-37:8, 64:10-25 (ECF No. 52-1). Ms. Laporte's objectivity is also in question given the fact that Juravin was her only employer from April 2016 through the date of her deposition. Laporte Depo. at 65:20-67:14 (ECF No. 52-1). Lastly, Juravin relies on Ms. Laporte to establish he has a difficult nature, and, according to Juravin, that personality flaw led to the FTC's Enforcement Action. Juravin Brief at 8. That is a curious proposition from someone who has claimed nobody buys the product because of him. Trial Tr. 8/18/20 at 38:6-20. Nevertheless, Juravin's musings are simply that. The FTC's claims in this adversary and in the Enforcement Action are *all* about advertising and marketing claims Juravin made regarding the Roca Labs products – not a single allegation has anything to do with Juravin's personality. The simple fact is he falsely and deceptively sold products that caused over $25 million in harm to consumers.

Although nothing in Juravin's Brief refutes the evidence outlined in the FTC's Closing, he misrepresents at least one issue regarding his own testimony. Juravin claims knowledge of a series of events from his review *at trial* of a timesheet prepared by Dr. Finesmith. Juravin Brief at 9. However, prior to any testimony about the items contained in that document, Juravin claimed it was "the first time I see it because I didn't even know he kept a log so…." Trial Tr. 8/18/20 at 7:12-25. In his brief, Juravin claims that his review of this "never-before-seen" timesheet establishes his *own* knowledge of a series of events related to Dr. Finesmith's purported involvement with claims made about the products (including on the website) and some hospital in Saudi Arabia that supposedly used Roca Labs products. As an initial matter, Dr. Finesmith is best suited to testify about what he actually did while working for Roca Labs. Juravin did not designate any testimony from Dr. Finesmith's deposition, but the FTC did. That deposition testimony establishes that Dr. Finesmith neither revised any website content, nor the ingredients in the Roca Labs products. Finesmith Tr. at 30:12-31:18. As for the purported Saudi Arabian hospital, Juravin did not reference that hospital or any data it supposedly had as substantiation for his claims (PX 160, Response to Interrogatory No. 1), nor has anyone established what version of the products that hospital may have used, or what the outcome was from anyone's use. Thus, testimony about the foreign hospital's experience with unidentified products is of no value since Juravin did not rely upon that experience in making claims about Roca Labs products. *See* PX 160.

## II. CONCLUSION

Juravin's defense centers on the claim that the FTC offered no new evidence at trial, even though it did – from him. Juravin's own testimony shows he is not credible. If the Court agrees with that conclusion, his denials of fraudulent intent are worthless. When his incredible denials

are removed from the massive pile of evidence submitted for this trial, there is only one logical conclusion: Juravin intended to deceive customers when marketing and selling the Roca Labs products. The FTC has provided ample evidence supporting a finding of intent to deceive for all of the five counts alleged in its Complaint. Thus, the FTC's judgment must be excepted from discharge under Section 523(a)(2)(A).

Dated: October 2, 2020          Respectfully submitted,

/s/ Kimberly L. Nelson
Kimberly L. Nelson (VA Bar No. 47224)
Michael P. Mora (Ill. Bar No. 6199875)
Federal Trade Commission
600 Pennsylvania Ave., NW, Mail Stop CC-9528
Washington, D.C. 20580
Telephone: (202) 326-3373 (Mora); -3304(Nelson)
E-Mail: mmora@ftc.gov; knelson@ftc.gov

*Attorneys for Plaintiff Federal Trade Commission*

**CERTIFICATE OF SERVICE**

I certify that a copy of the foregoing *Federal Trade Commission's Response to Defendant Don Karl Juravin's Post-Trial Brief* was served via ECF Notice to counsel for Defendant Don Karl Juravin and any other registered ECF user participant in this adversary listed below on October 2, 2020.

Dated: October 2, 2020          /s/ Kimberly L. Nelson

*Via ECF Notice*
To: aldo@bartolonelaw.com; aldo.bartolone@gmail.com; aldo@ecf.courtdrive.com;
    erin@bartolonelaw.com
Aldo G. Bartolone, Jr., Esq.
Bartolone Law, PLLC
1030 N. Orange Avenue, Suite 300
Orlando, Florida 32801
Counsel for Defendant