ORDERED.

Dated: October 27, 2020

*Karen S. Jennemann*
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION
www.flmb.uscourts.gov

| | |
|---|---|
| In re | ) |
| | ) |
| Don Karl Juravin, | ) Case No. 6:18-bk-06821-KSJ |
| | ) Chapter 7 |
| Debtor. | ) |
| | ) |
| | ) |
| Federal Trade Commission, | ) |
| | ) |
| | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Adversary No. 6:19-ap-00030-KSJ |
| | ) |
| Don Karl Juravin, | ) |
| | ) |
| Defendant. | ) |
| | ) |

## MEMORANDUM OPINION FINDING DEBT NOT DISCHARGEABLE

Plaintiff, the Federal Trade Commission ("FTC"), asserts its $25 million judgment against the Debtor, Don Karl Juravin, is not dischargeable under 11 U.S.C. § 523(a)(2)(A) of the Bankruptcy Code.[1] The Court already has issued a partial summary judgment[2] resolving all issues

---

[1] All references to the Bankruptcy Code refer to 11 U.S.C. § 101, *et. seq.*
[2] Doc. No. 34.

for the Plaintiff except one remaining dispute—whether the Debtor, by making numerous affirmative misrepresentations about the efficacy of his weight-loss products, acted with the "intent to deceive" his customers. After listening to the Debtor's unpersuasive explanation at trial,[3] I find the Debtor intended to deceive his customers to enrich himself by over $7 million. Debtor did not enrich himself for any altruistic purpose. Plaintiff's judgment against the Debtor is not discharged.

Before filing this bankruptcy case, the Debtor owned Must Cure Obesity, Co.[4] and Juravin, Incorporated and was an officer of Roca Labs, Inc., Roca Labs Nutraceutical USA, Inc., and Zero Calorie Labs, Inc. (collectively, the "Roca Entities"). Defendant operated the Roca Entities from 2009-2016. He received at least $7 million from the enterprise.

Defendant sold weight-loss products, including Roca Labs Formula and Roca Labs Anti-Cravings, as a safe and cost-effective alternative to gastric bypass surgery to combat obesity and achieve substantial weight-loss (the "Products"). Consumers paid hundreds of dollars for the Products, which were worthless other than to convince customers they were following a fake medical regime to lose weight. During testimony, Debtor conceded the only way his customers lost weight was to eat less and exercise more, something they could do without buying his expensive Products.

The FTC sued Debtor and the Roca Entities in the United States District Court for the Middle District of Florida ("District Court") alleging claims of deceptive trade practices under

---

[3] Debtor requested a translator to assist him with his testimony. *See* Doc. No. 38. The Court granted this request. Doc. No. 45. The translator assisted the Debtor throughout the trial, however, due to her illness, the trial, scheduled to start on June 25, 2020, was continued until August 17 and 18, 2020. The Court received testimony from two third-party witnesses on June 26, 2020—Dr. Marcus Free and Tejas Chokis. Debtor testified on August 17 and 18, 2020. Both parties submitted post-trial closing arguments. Doc. Nos. 80, 81, and 84. Parties also designated deposition testimony excerpts. Doc. Nos. 51, 52, and 61.

[4] Must Cure Obesity, Co. filed a petition seeking relief under Chapter 11 of the Bankruptcy Code on January 31, 2020. Case No. 8:20-bk-00924-CED. The case quickly was dismissed because the Debtor failed to pay the filing fee or file needed papers. Doc. No. 13. The case has been closed since March 24, 2020.

Sections 5(a) and 12 of the Federal Trade Commission Act ("FTC Act").[5] The District Court granted summary judgment for the FTC and later entered a separate judgment awarding damages of $25,246,000 against the Debtor (the "Judgment").[6] No trial was held; the District Court did not receive testimony or make any findings of the Debtor's credibility.

Juravin then filed this Chapter 7 bankruptcy case.[7] The FTC filed this adversary proceeding seeking a determination that the Judgment is excepted from discharge under § 523(a)(2)(A) of the Bankruptcy Code and sought summary judgment.[8] Debtor conceded summary judgment was proper except for one remaining issue—whether the Debtor acted with the "intent to deceive," which was not decided by the District Court.[9] Partial summary judgment was granted, and the trial was scheduled.

Under Section 523(a)(2)(A) of the Bankruptcy Code, a debtor cannot discharge a debt based on "false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition."[10] "Courts have generally interpreted § 523(a)(2)(A) to require the traditional elements of common law fraud."[11] To prove fraud, the plaintiff must establish these elements by a preponderance of the evidence: (i) the debtor made a

---

[5] *See Federal Trade Commission v. Roca Labs, Inc.*, 345 F.Supp.3d 1375 (M.D. Fla. 2018) for a full discussion of the District Court case. The opinion explains in detail the numerous deceptive and false statements made by the Debtor and the Roca Entities in selling their weight-loss Products.
[6] *Roca Labs*, 345 F.Supp.3d 1375. On September 14, 2018, the District Court granted the FTC's Motion for Summary Judgment on the Section 5(a) and 12 claims and on January 4, 2019, entered the Judgment against the Debtor and five Roca Labs-related corporate defendants, jointly and severally. *See* Doc. No. 1, Exh. A.
[7] Doc. No. 1, Case No. 6:18-bk-06821-KSJ. The Chapter 7 liquidation case was filed on October 31, 2018. The bankruptcy case was converted to a Chapter 11 reorganization case on September 16, 2019, after this adversary proceeding was filed. Because the Debtor was unable to confirm a Chapter 11 Plan, the case reconverted to a Chapter 7 liquidation case on March 16, 2020. Doc. No. 323, Case No. 6:18-bk-06821-KSJ. Because no other creditor objected, the Debtor received a Discharge of all other debts on June 26, 2020. Doc. No. 368, Case No. 6:18-bk-06821-KSJ.
[8] Doc. No. 15. Plaintiff also filed a Statement of Undisputed Facts in Support of Motion for Summary Judgment, and a Memorandum in Support of Summary Judgment. Doc. Nos. 16 and 17. Defendant filed a Response to Plaintiff's Motion for Summary Judgment and Memorandum of Law in Opposition. Doc. No. 22. Plaintiff filed a Reply and Memorandum in Support of Motion for Summary Judgment. Doc. No. 29.
[9] Doc. No. 22.
[10] 11 U.S.C. § 523(a)(2)(A).
[11] *See SEC v. Bilzerian (In re Bilzerian)*, 153 F.3d 1278, 1281 (11th Cir. 1998).

false representation with *intent to deceive* the creditor; (ii) the creditor relied on the misrepresentation; (iii) the reliance was justified; and (iv) the creditor sustained a loss because of the misrepresentation.[12] All of these elements except "intent to deceive" was decided on summary judgment.[13]

To prove an intent to deceive, "the debtor must be guilty of positive fraud, or fraud in fact, involving moral turpitude or intentional wrong, and not implied fraud, or fraud in the law, which may exist without the imputation of bad faith or immorality."[14] Actual fraud precluding discharge "consists of any deceit, artifice, trick, or design involving [the] direct and active operation of the mind, used to circumvent and cheat another—something said, done or omitted with the design or perpetrating what is known to be a cheat or deception."[15] An analysis determining fraudulent intent often "depends largely upon an assessment of the credibility and demeanor of the debtor."[16] Because a debtor rarely admits fraudulent intent, courts look at the totality of circumstances to make that determination.[17]

A bankruptcy court may look to the recklessness of a debtor's behavior under the totality of the circumstances.[18] "Reckless disregard for the truth or falsity of a statement combined with the sheer magnitude of the resultant misrepresentation may combine to produce the inference of intent [to deceive]."[19] Ultimately, it is the plaintiff's burden of proof to prove intent to deceive by a preponderance of the evidence.[20]

---

[12] *Id.*
[13] Doc. No. 34.
[14] *Schweig v. Hunter (In re Hunter)*, 780 F.2d 1577, 1579 (11th Cir. 1986) (abrogated on other grounds by *Grogan v. Garner*, 498 U.S. 279 (1991)).
[15] *In re Howard*, 261 B.R. 513, 517 (Bankr. M.D. Fla. 2001)(internal citations omitted).
[16] *J. Thompson Invs., LLC v. Soderstrom (In re Soderstrom),* 524 B.R. 835, 841 (Bankr. M.D. Fla. 2015); *see also Equitable Bank v. Miller (In re Miller), 39 F.3d 301, 305* (11th Cir. 1994).
[17] *Equitable Bank v. Miller (In re Miller)*, 39 F.3d 301, 304 (11th Cir. 1994).
[18] *Id.* at 305.
[19] *Id.*
[20] *Grogan v. Garner*, 498 U.S. 279 (1991).

The FTC has proven by more than a preponderance of the evidence that Juravin intended to deceive consumers by marketing his weight-loss Products. Debtor (1) made numerous false statements regarding the efficacy of the Products, (2) paid actors to read scripted success stories, (3) created a website, Gastricbypass.me, to advertise the Products as a safe and effective alternative to gastric bypass surgery, without disclosing the website's relationship to the Roca Entities, and (4) suppressed negative customer reviews of the Products. Defendant testified he made these material misrepresentations because he loved helping people and wanted to make sure his customers achieved their weight loss goals. Defendant's testimony is not credible. Defendant fraudulently marketed and advertised the Roca Entities' products because it benefitted him financially by $7 million, not because he wanted to "help" his customers. Debtor could had achieved this laudable goal without profiting by millions of dollars.

The District Court already found Juravin made materially false and deceptive claims relating to the Products. Juravin ran the Roca Entities and directly scripted or participated in making the numerous marketing misrepresentations used to convince consumers to spend hundreds of dollars on valueless products.[21] Those claims include that 90% of users of the Roca Entities' products would lose up to twenty pounds a month, the Roca Entities' products would reduce food intake by 50% and stay in the stomach for 10 to 16 hours, the Roca Entities' products were comparable or superior to bariatric surgery in providing weight loss benefits, and the Roca Entities' products were safe and effective for weight loss in children as young as six years old. Debtor admitted he was responsible for all these statements appearing on the Roca Entities' website.[22] No claims were substantiated with scientific evidence or formal studies.

---

[21] *Roca Labs*, 345 F. Supp. 3d at 1386-40.
[22] Trial Tr. 8/17/20 at 34:20-24.

Juravin testified he conducted general research and relied on informal consumer feedback to substantiate these claims.[23] Juravin argued consumers did not actually rely on the website misrepresentations. He wants the Court to believe customers instead relied on conversations among themselves on Roca Entities' Facebook groups, Instagram accounts, and Google Plus account for several months before buying the products.[24] Juravin described his false statements merely as "points for discussion" among prospective customers.[25] Juravin's explanation is unbelievable. Debtor desperately tried to distance himself from the false claims he placed on the Roca Entities website to downplay the magnitude of his misrepresentations. Defendant knew these claims were unsubstantiated; yet he left them on Roca Entities' websites for years to attract potential customers.

Debtor also paid actors to appear on the Roca Entities' YouTube channel to describe their "success" stories and positive experiences with the Product. None of the videos disclose the speaker is an actor who never used the Product.[26] When challenged, Debtor testified those videos were "inspirational" videos and customers somehow just "knew" the difference between an actor and a real user.[27] Debtor kept these deceptive and misleading videos on the Roca Entities' YouTube channel for years to deceive new customers into buying the weight-loss products.

Juravin also created a separate website, Gastricbypass.me, discussing bariatric surgery and promoting his weight-loss products as a "Surgical Alternative." The website did not disclose the Roca Entities controlled and were responsible for the numerous misrepresentations on this website. According to Juravin, he saw no value in disclosing the Roca Entities' affiliation.[28] Defendant

---

[23] Trial Tr. 8/17/20 at 51:3-6, 73:18-74:18, 76:14-77:21; Trial Tr. 8/18/20 at 34:5-23.
[24] Trial Tr. 8/17/20 at 174:15-175:10.
[25] Trial Tr. 8/18/20 at 59:12-60:2.
[26] Plaintiff's Exhs. 81 and 155; Trial Tr. 8/17/20 105:22-110:14.
[27] Trial Tr. 8/18/20 at 24:9-15.
[28] Trial Tr. 8/17/20 at 122:1-12.

purposely kept the relationship between Gastricbypass.me and the Roca Entities secret to sell Product.

Debtor actively censored negative Products reviews using a gag clause buried in the purchase terms. Before buying the Products, customers had to verify they read the terms, which included a clause restricting consumers from negatively commenting on the Products.[29] If a consumer wrote a negative review, Debtor's lawyers sent a letter to the offending customer threatening legal action seeking "hundreds of thousands of dollars" of damages.[30] Juravin approved and sent this letter to numerous customers who legitimately complained about the Products' efficacy.[31]

Debtor testified he suppressed negative reviews because he was trying to "protect" *existing* customers from malicious negative reviews.[32] Juravin's testimony is not believable. He went to extreme efforts to prevent negative reviews to stop *prospective* customers from seeing them, not to protect existing customers who, one assumes, either were satisfied or not with their purchase. Juravin did not want to protect existing customers. Juravin wanted to keep the money flowing to enrich himself without regard for the lies and false statements he spread to encourage new customers to buy his worthless goods.

Considering the totality of the circumstances, I conclude Juravin intentionally deceived his customers into buying the Roca Entities' Products primarily to enrich himself. The FTC has met

---

[29] Plaintiff's Exh. 124. *See also Roca Labs*, 345 F. Supp. 3d at 1390-92. The District Court found customers could not avoid this gag clause due to the way the Debtor designed the purchase process.
[30] Plaintiff's Exh. 161; Trial Tr. 8/17/20 at 143:13-17.
[31] Plaintiff's Exh. 161.
[32] Trial Tr. 8/18/20 at 40:3-41:10.

its burden of proof.[33] Numerous additional examples of the Debtor's brash misrepresentations also are listed in the FTC's post-trial closing arguments.[34]

Debtor's own testimony, however, further confirms the FTC's allegation he acted with the requisite intent to deceive. For example, the Products were supposed to stay in a person's stomach for 10 to 16 hours, which would suppress hunger and result in reduced food intake. Debtor directly testified the products remained in the stomach for only three and a half or four hours, about the same as a normal meal.[35] He just wanted to "trick" his customers into fasting for longer periods of time.[36]

And the Roca Entities website stated its Products required no corresponding diet restrictions.[37] At trial, Juravin admitted "of course we have diet restrictions" and the assertion there were no diet restrictions was "misworded."[38] In reality, customers were told to limit calories, avoid certain foods, eat during a limited period during the day, and exercise more to lose weight.[39] So, instead of relying on the Products to lose weight, customers had to follow a traditional diet—eat less and exercise more. But Debtor did not want them to know his products were valueless; he argues that by paying for the product they will diet more seriously. I reject this argument concluding Debtor intended to deceive his customers by telling them lies to get them spend monies

---

[33] *See also* Doc. No. 81. Debtor argues the FTC did not meet its burden of proof because it failed to present new evidence beyond the evidence used in the District Court action. This is not accurate. Juravin testified for hours at the trial in this adversary proceeding over two days. The FTC is not required to introduce testimony of dissatisfied customers or prove the efficacy of the Product. All of this was established at the District Court. The only remaining issue is whether the Debtor intended to deceive his customers by making false and misleading statements. The evidence introduced by the FTC is more than sufficient to support this position.
[34] Doc. Nos. 80 and 84.
[35] Trial Tr. 8/17/20 at 88:16-21.
[36] Trial Tr. 8/17/20 at 91:20-24. Defendant quibbled with his use of the word "trick" explaining he intended to "trick" his customers for a good purpose, i.e., to get them to lose weight.
[37] Plaintiff's Exh. 8. During trial, the Court viewed videos from the Roca Entities' website that reinforced this claim. The videos featured paid actors wearing white lab coats to imitate medical professionals. Plaintiff's Exhs. 80 and 155.
[38] Trial Tr. 8/17/20 at 79:22-25.
[39] Trial Tr. 8/17/20 at 81:7-86:23.

they sometimes saved months to collect. He acted to enrich himself, not to supply tools to help his customers lose weight.

Defendant advertised his Products as one thing, while knowing they did not work as promoted. Defendant intentionally tricked customers into buying his Products through consistent and repeated misrepresentations. The Court finds Juravin intended to deceive customers of the Roca Entities. Thus, the Judgment is non-dischargeable under 11 U.S.C. § 523(a)(2)(A). A separate Final Judgment for the Plaintiff and against the Defendant simultaneously shall enter.

### 

Attorney, Kimberly L. Nelson, is directed to serve a copy of this order on all interested parties who are non-CM/ECF users and file a proof of service within three days of entry of the order.